MONARCH LIFE INSURANCE COMPANY, Appellant-Respondent, v
ALAN R. BROWN, Respondent-Appellant.

First Department, February 26, 1987

## APPEARANCES OF COUNSEL

*James J. Shaughnessy* of counsel *(James J. Markowski* with him on the brief; *Haythe & Curley,* attorneys), for appellant-respondent.

*Allen Jay Bodner* for respondent-appellant.

## OPINION OF THE COURT

Asch, J.

On September 9, 1981, Monarch Life Insurance Company (Monarch) issued a disability insurance policy to Alan R. Brown providing a monthly disability income benefit of $1,500. On June 24, 1984, more than two years after the inception of the policy, Brown submitted an application for benefits to Monarch. It stated that he had suffered a heart attack on April 30, 1984, and that he was thus rendered totally disabled from his then occupation, that of an accountant.

A letter from Brown's doctor, John Morseman, M.D., stated that since Brown's hospitalization in May of 1984, "he has been completely unable to work because of his underlying heart disease".

Monarch later discovered that in 1976, Brown had been hospitalized as a result of an acute myocardial infarction. Because of this disability, in 1977 he had been found to be disabled from serving in his former position as Special Agent in the United States Treasury Department. He was subsequently hospitalized in July 1980 and October 1980 and diagnosed as suffering, *inter alia,* from coronary artery disease and cardiac arrhythmia.

In Brown's 1981 application for the disability insurance, he had made no mention of the fact that he had suffered a previous heart attack or that he had been under treatment for heart disease. In that application, Brown stated that he had not been hospitalized within the preceding five years and that he did not have such symptoms as "hypertension, angina" and other heart symptoms from which he did, in fact, suffer.

Monarch commenced this action seeking a declaratory judgment that, under the terms of the disability income policy, it is not obligated to pay the claim made by defendant.

The policy, on its face page, states: "Subject to all provisions of this policy, we insure you against disability or other loss resulting from: *sickness,* which first makes itself known while this policy is in force". (Emphasis added.)

Under the policy amendment rider which, in conformance with New York State Insurance Law, changes the incontestability period from three years to two years, the following language appears:

### "CONTESTING THIS POLICY

### "MISSTATEMENTS IN THE APPLICATION

"We rely on the statements you make in your application. We will not contest those statements after this policy has been in effect for 2 years during your lifetime. Any length of time you are disabled is excluded in computing this 2 year period.

### "PRE-EXISTING CONDITIONS LIMITATIONS

"If disability starts or a loss is incurred more than 2 years after the Date of Issue, we won't reduce or deny the claim on the ground that sickness or physical condition existed before this policy's effective date. This does not apply to any sickness or physical condition excluded from coverage by name or specific description."

It is Monarch's position, as regards the meaning of the above policy provisions, that the policy requires it to pay benefits to Brown only for those physical illnesses which had not *manifested* themselves before the policy was issued. In other words, Monarch maintains that a fair reading of the incontestability clause bars it from disclaiming coverage for illnesses which may have been present before the issuance of the policy but the presence of which had not yet "manifested" themselves in symptoms which reasonably would have led to a diagnosis. Defendant acknowledges that he deliberately omitted to describe his previous cardiac history on his policy application form. However, he claims that, since he was not totally disabled until the two-year "incontestable" period had run, Monarch is obligated to pay the full $1,500 monthly disability benefits to him.

The leading case in New York concerning the application of an incontestability clause is *Apter v Home Life Ins. Co.* (266 NY 333), decided in 1935. There the policy provided that payments would be made for disability arising from disease commencing after the issuance of the policy. The policy also contained an incontestability clause providing simply that, after the policy had been in force for one year, it would be incontestable except for the nonpayment of premiums. The insurer sought to prove after a one-year period had elapsed that the insured had contracted the disabling disease before

the policy had been issued. The Court of Appeals held that it was not barred by the incontestability clause from so doing, finding that the insurer excluded such a preexisting disability from coverage.

Since the decision in *Apter (supra)*, the Legislature amended the Insurance Law to mandate the inclusion of a clause, such as that inserted by plaintiff in its instant policy, which bars it from denying a claim on the ground that a disease or physical condition not excluded by name or specific description *existed* prior to the effective date of the policy. (Insurance Law § 164 [3] [A], now Insurance Law § 3216 [d].)

Insurance Law § 3216 (d) currently contains, *inter alia,* the incontestability clause which is mandated for use and does not differ in salient respects from the prior language used in Insurance Law former § 164:

"(d) Each policy of accident and health insurance * * * shall contain the provisions specified herein * * * except that the insurer may, at its option, substitute for one or more of such provisions corresponding provisions of different wording approved by the superintendent which are not less favorable in any respect to the insured * * *

"(1) Each policy shall * * * contain the following provisions:

"(A) ENTIRE CONTRACT; CHANGES: This policy, including the endorsements and the attached papers, if any, constitutes the entire contract of insurance * * *

"(B) TIME LIMIT ON CERTAIN DEFENSES:

"(i) After two years from the date of issue of this policy no misstatements, except fraudulent misstatements, made by the applicant in the application for such policy shall be used to void the policy or to deny a claim for loss incurred or disability (as defined in the policy) commencing after the expiration of such two year period * * *

"(A policy * * * may contain in lieu of the foregoing the following provision (from which the clause in parenthesis may be omitted at the insurer's option) under the caption 'INCONTESTABLE':

"After this policy has been in force for a period of two years during the lifetime of the insured (excluding any period during which the insured is disabled), it shall become incontestable as to the statements contained in the application.)

"(ii) No claim for loss incurred or disability (as defined in the policy) commencing after two years from the date of issue

of this policy shall be reduced or denied on the ground that a disease or physical condition not excluded from coverage by name or specific description effective on the date of loss had existed prior to the effective date of coverage of this policy."

The insurer's attempt to deny benefits for any disability arising from "sickness, which first makes itself known while [the] policy is in force" does not comply with the statute's requirement that exclusion from coverage for disease or physical condition be "by name or specific description".

In addition, as noted by the Appellate Term of this Department over 20 years ago: "[The Insurer] may not complain of rigor or unfairness of this application of the law. It could have protected itself against a situation of this kind by incorporating in its policy the language authorized by clause (a) of the Insurance Law (§ 164, subd. 3, par. [A], subpar. [2] [now 3216 (d) (1) (B)]), which reads: 'After two years from the date of issue of this policy no misstatements, *except fraudulent misstatements,* made by the applicant * * * shall be used to void the policy or to deny a claim for * * * disability * * * commencing after * * * such two year period' " *(Rackear v Springfield Fire & Mar. Ins. Co.,* 48 Misc 2d 707, 710; *see also, Greenhaus v American Progressive Health Ins. Co.,* 33 Misc 2d 280, *affd* 18 AD2d 1076). Thus, in the case before us, if Monarch had wanted to obviate the use of the two-year Statute of Limitations in the incontestability clause, it could have availed itself of the time limitation of certain defenses clause in section 3216 (d) (1) (B). This would have given it the right to defend upon the ground of false and fraudulent representations by the insured in the application relating to the existence of diseases or physical condition prior to the policy date.

In *White v Massachusetts Cas. Ins. Co.* (96 AD2d 732), decided by the Fourth Department in 1983, a case on all fours with this one, the insurer, as here, argued that the incontestability clause did not apply. The insurer argued that it did not seek to avoid coverage on the ground that the illness "existed" before the policy, but rather because the illness "manifested" itself before the policy was entered into. Hence, the illness was not a risk covered by it. However, as noted by the *White* court, this would result in making the incontestability clause absolutely meaningless since the insurer would be able to contest every illness or disease on the basis it had been "manifest" before the policy was entered into. "The Legislature could not have intended to require the insurer to insert a

meaningless provision. We conclude, therefore, that the only reasonable construction of the mandated provision is that a disclaimer based on previous manifestation is perforce also based on previous existence and, as such, not permitted by the incontestability clause. The legislative intent behind this clause is to safeguard an insured from excessive litigation many years after a policy has already been in force and to assure him security in financial planning for his family, while providing an insurer a reasonable opportunity to investigate *(Simpson v Phoenix Mut. Life Ins. Co.,* 24 NY2d 262, 266). The statutory scheme gives the insurer two years to conduct an investigation of facts relevant to determining its risks; having failed to investigate, the insurer cannot be heard to complain now" *(White v Massachusetts Cas. Ins. Co., supra,* pp 732-733; accord, *Fischer v Massachusetts Cas. Ins. Co.,* 458 F Supp 939 [SDNY]).

In *Mutual Life Ins. Co. v Hayden* (87 Misc 2d 1039, 1044, *affd on opn below* 60 AD2d 823, *lv dismissed* 44 NY2d 838), Special Term, in dicta, supported the position of the insurer herein, declaring that the insurer should be allowed to deny disability benefits for illness "manifesting" itself prior to the policy date. Special Term, in *Hayden,* cited only *Rackear v Springfield Fire & Mar. Ins. Co. (supra),* and did not cite or refer to any other of the New York decisions discussed herein. The exposition of the law in *Hayden* was based on the decision in *Massachusetts Cas. Ins. Co. v Forman* (516 F2d 425 [5th Cir]), which was cited by *Hayden* as the source of its analysis.

*Forman (supra)* states that the incontestability clause requires payment as to illness which exists but has not manifested itself at the commencement of the policy, but permits payment to be denied as to illness which has manifested itself before the policy begins.

However, as noted, the term "exist" as used by the Legislature subsumes the term "manifest". Whether an illness is or is not manifest, the fact that it "exists" prior to the agreement of insurance brings it within the purview of the incontestability clause. The insurer has attempted to carve out an exception to the use of the statutory term "exist" by employing the word "manifest", but there is no indication that the Legislature intended anything other than the broader plain intent of the language it used. Moreover, to follow the *Forman exist-manifest* distinction renders the statutorily mandated incontestability clause a nullity, defeating the legislative intent in requiring such a clause.

The proper interpretation of the incontestability clause is to deny benefits when disability caused by preexisting illness occurs within the two-year contestability period and to allow recovery when such disability occurs more than two years from the inception of the policy.

A policy which is subject to more than one reasonable interpretation must be interpreted to resolve ambiguity against the insurer and in favor of the policyholder. It is black letter law that if the insurer intends to exclude liability, such intention must be clearly expressed *(Miller v Continental Ins. Co.,* 40 NY2d 675, 678-679). This is true in the construction of incontestability clauses in disability policies *(Berkshire Life Ins. Co. v Weinig,* 290 NY 6). Therefore, the interpretation of the incontestability clause urged by the insurer is not justified by either the language of the contract of insurance, the statute, or public policy.

However, although we deal with the issue of law presented by the parties, it appears that there still remain factual issues which would preclude summary judgment for the defendant insured at this time. Among these issues is whether defendant is or was totally disabled, as defined by the insurance policy, and thus entitled to the payments he seeks.

Accordingly, the order of the Supreme Court, New York County (Milton H. Richardson, J.), entered May 28, 1986, which denied both plaintiff Monarch Life Insurance Company's motion and defendant Alan R. Brown's cross motion seeking summary judgment, should be modified, on the law, to grant defendant's cross motion for summary judgment solely to the extent of declaring that defendant's heart disease and coronary artery disease which existed prior to the issuance of the policy are risks insured against and therefore covered under the policy, and otherwise affirmed, without costs or disbursements.

SULLIVAN, J. P., CARRO and ELLERIN, JJ., concur.

Order, Supreme Court, New York County, entered on May 28, 1986, unanimously modified, on the law, to grant defendant's cross motion for summary judgment solely to the extent of declaring that defendant's heart disease and coronary artery disease which existed prior to the issuance of the policy are risks insured against and therefore covered under the policy, and otherwise affirmed, without costs and without disbursements.