Robert C. MAGEE, Plaintiff,

v.

**THE PAUL REVERE LIFE INSURANCE COMPANY,** Defendant.

No. CV 95–4574(ADS).

United States District Court, E.D. New York.

April 8, 1997.

---

Westermann & Tryon, Garden City, NY, for Plaintiff; Michael D. Tryon, Leslie C. Flynn, of counsel.

Windels, Marx, Davies & Ives, New York City, for Defendant; Thomas Mulligan, of counsel.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge:

There being no objections filed to the March 21, 1997 report and recommendation of United States Magistrate Judge Michael L. Orenstein, it is hereby

ORDERED, that the March 21, 1997 report and recommendation of Judge Orenstein is adopted as the opinion of this Court.

SO ORDERED.

## *REPORT AND RECOMMENDATION*

ORENSTEIN, United States Magistrate Judge.

Pending before the Court is Defendant's motion for leave to amend its Answer to add an affirmative defense and three counterclaims. For the reasons set forth below, this Court reports and recommends that the motion be denied.

## BACKGROUND

This is a breach of contract action brought under the Court's diversity jurisdiction, 28 U.S.C. § 1332. The gravamen of the Complaint is that Defendant breached a policy of disability insurance (the "Policy") issued to Plaintiff when it ceased making monthly pay-

ments allegedly due and owing Plaintiff. In its defense, Defendant claims that it stopped making payments to Plaintiff only after determining that he was no longer permanently mentally disabled within the meaning of the Policy.

The proffered affirmative defense maintains that Plaintiff intentionally and fraudulently made material misrepresentations in his application for the Policy. The proposed counterclaims all relate to the alleged misrepresentations. Counterclaim I seeks a judgment rescinding the Policy. Counterclaim II seeks restitution, less premiums paid, for some $250,000.00 in benefits paid out to Plaintiff under the Policy. Counterclaim III seeks a declaration that the Policy was void *ab initio*. Counterclaim IV seeks to recover benefits paid Plaintiff, less premiums, under the theory of unjust enrichment.

The alleged misrepresentations stem from a question on the Policy application concerning past illicit drug use. The question stated as follows:

2. Has *any person ever*:

    a. Except as legally prescribed by a physician, used: cocaine, barbiturates heroin, or any narcotic drug?

In response, Plaintiff checked the "NO" box under the column "Proposed Insured". At Plaintiff's deposition, however, he testified that he had used illicit drugs (including cocaine, hashish and marijuana) numerous times in the 1970's and 1980's. (*See* Mulligan Aff. Ex. D at 337, 452–61, 492–94.) Defendant has submitted an Affidavit from one Sharron DiMartino, the manager in its Individual Underwriting Department who underwrote Plaintiff's Policy. Not surprisingly, Ms. DiMartino avers that, had she known of Plaintiff's past drug use, she would not have approved Plaintiff's application for a disabili-

ty policy, and that the Underwriting Guidelines would have supported such a decision. (DiMartino Aff. ¶¶ 25–26.)

## DISCUSSION

### I. Standards Governing Motions to Amend

Defendant's application is governed by Federal Rules of Civil Procedure 13(f) and 15(a). Rule 13(f) authorizes a party to interpose a counterclaim with leave of court when the party "fails to set up [the] counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires." Rule 15(a) is the provision enabling a party to amend its pleading generally, providing that "leave [to amend] shall be freely given when justice so requires."[1] Consistent with public policy favoring the efficient resolution of disputes on their full merits, both the Supreme Court and the Second Circuit Court of Appeals have adhered to the commands of liberality embodied in Rules 13(f) and 15(a). *See, e.g., Nerney v. Valente & Sons Repair Shop*, 66 F.3d 25, 28 (2d Cir.1995)(per curiam)("[T]he Supreme Court has emphasized that amendment should normally be permitted." (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962))); *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir.1991)("[I]t is rare that such leave [to amend] should be denied, especially when there has been no prior amendment." (citations omitted)).

Nevertheless, it is well-established that leave to amend a pleading may be denied where the proposed amendment would be futile. *E.g., Foman*, 371 U.S. at 182, 83 S.Ct. at 230; *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 18 (2d Cir.1997); *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 55 (2d Cir.1995); *In re American*

---

1. Rules 13(f) and 15(a) are not at odds with one another. *Compare Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 392 n. 10, 113 S.Ct. 1489, 1497 n. 10, 123 L.Ed.2d 74 (1993)("In assessing what constitutes 'excusable neglect' under Rule 13(f), the lower courts have looked, *inter alia*, to the good faith of the claimant, the extent of the delay, and the danger of prejudice to the opposing party.") *with Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)(holding leave to

amend should be freely granted in absence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment"). Rather, they must be read in conjunction with one another. *See Banco Para el Comercio Exterior de Cuba v. First Nat'l City Bank*, 744 F.2d 237, 244 (2d Cir.1984).

*Express Co. Shareholder Litig.*, 39 F.3d 395, 402 (2d Cir.1994). An amendment is deemed futile if it fails to state a claim under the principles employed by the Court when deciding on a Rule 12(b)(6) motion to dismiss. *See S.S. Silberblatt, Inc. v. East Harlem Pilot Block*, 608 F.2d 28, 42 (2d Cir.1979); *Gabourel v. Bouchard Transp. Co.*, 901 F.Supp. 142, 144 (S.D.N.Y.1995). Therefore, in the amendment context, the Court accepts as true all well-pleaded factual allegations set forth in the proposed amendment, *DeJesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 69 (2d Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 509, 136 L.Ed.2d 399 (1996); *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir.1996), and views such allegations, as well as all reasonable inferences drawn therefrom, in the light most favorable to the moving party. *Harsco Corp. v. Segui*, 91 F.3d 337, 341 (2d Cir.1996); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir.1996); *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.1994). Only if " 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations' " should the amendment be denied. *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249–50, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1988)(quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)).

## II. Application of Futility Doctrine to the Instant Case

The affirmative defense and three counterclaims Defendant seeks to add are predicated upon Plaintiff's alleged misrepresentations regarding past drug use in his application for the Policy. As recognized by Defendant, the threshold obstacle it must overcome in demonstrating a colorable claim of material misrepresentation is the incontestability clause contained in the Policy, which reads as follows:

10.2 Incontestable

a. After Your Policy has been in force for 2 years, excluding any time you are disabled, We cannot contest the statements in the application.

(DiMartino Aff. Ex. C.) Despite Defendant's attempts to circumvent the incontestability clause, however, the Court concludes that the clause serves as an absolute bar to any claim of material misrepresentation.

■ Incontestability clauses "[are] in the nature of, and serve[ ] a similar purpose as a Statute of Limitations." *Berkshire Life Ins. Co. v. Fernandez*, 124 A.D.2d 120, 511 N.Y.S.2d 348, 350 (2d Dep't 1987), *aff'd,* 71 N.Y.2d 874, 527 N.Y.S.2d 751, 522 N.E.2d 1049 (1988). "Examination of 'the legislative history of the incontestable clause shows it is designed to encourage insurance buyers to purchase insurance with confidence that after the contestable period has passed they are assured of receiving benefits if they are disabled.' " *Spear v. Guardian Life Ins. Co. of America*, 112 A.D.2d 904, 493 N.Y.S.2d 322, 325 (1st Dep't 1985)(quoting *Fischer v. Massachusetts Casualty Ins. Co.*, 458 F.Supp. 939, 944 (S.D.N.Y.1978)). Under the New York State Insurance Law, such clauses must be inserted in certain types of insurance policies. *See* N.Y. Ins. Law § 3203(a)(3) (McKinney 1985 & Supp. 1997)(life insurance); N.Y. Ins. Law § 3216(d)(1)(B) (McKinney 1985 & Supp.1997)(individual accident and health insurance).

As a preliminary matter, both Plaintiff and Defendant cite to the wrong provision of the New York State Insurance Law, namely, Section 3203. Section 3203 governs *life insurance* policies, stating in relevant part the following:

(a) All life insurance policies ... shall contain in substance the following provisions, or provisions which the superintendent deems to be more favorable to policyholders:

.        .        .        .        .

(3) that the policy shall be incontestable after being in force during the life of the insured for a period of two years from its date of issue....

Plaintiff's Policy, however, is one for health insurance,[2] and is clearly denominated as

---

2. Pursuant to New York Insurance Law Section 1113(a)(3), incorporated by reference under Sec-   tion 3216(a)(1),

such. (*See* Mulligan Aff., notarized January 21, 1997, Ex. A.) Consequently, Section 3216 is triggered. It provides in pertinent part as follows:

§ 3216. Individual accident and health insurance policy provisions

(d) Each policy of accident and health insurance delivered or issued for delivery to any person in this state shall contain the provisions specified herein in the words in which the same appear in this subsection, except that the insurer may, at its option, substitute for one or more of such provisions corresponding provisions of different wording approved by the superintendent which are not less favorable in any respect to the insured or the beneficiary ...

(1) Each policy shall ... contain the following provisions:

. . . . .

(B) TIME LIMIT ON CERTAIN DEFENSES:

(i) After two years from the date of issue of this policy no misstatements, except fraudulent misstatements, made by the applicant in the application for such policy shall be used to void the policy or to deny a claim for loss incurred or disability (as defined in the policy) commencing after the expiration of such two year period....

(A policy which the insured has the right to continue in force subject to its terms by the timely payment of premium ... may contain in lieu of the foregoing the following provision (from which the clause in parentheses may be omitted at the insurer's option) under the caption "INCONTESTABLE":

After this policy has been in force for a period of two years during the lifetime of the insured (excluding any period during which the insured is disabled), it shall become incontestable as to the statements contained in the application.)

As set forth above, Section 3216 endorses two forms of the requisite incontestability clause. Revealingly, Defendant chose to insert the latter clause in Plaintiff's policy, which, unlike the former clause authorized under New York law, omits any exception for fraudulent misstatements. In this regard, the case of *Monarch Life Ins. Co. v. Brown*, 125 A.D.2d 75, 512 N.Y.S.2d 99 (1st Dep't 1987), is directly on point. In *Monarch*, the insured had suffered a heart attack in 1976, and was hospitalized for coronary artery disease in 1980 and 1981. In his 1981 application for disability insurance, however, the insured stated that he had not been hospitalized in the preceding five years and did not suffer from any symptoms of heart disease. *Id.* 512 N.Y.S.2d at 100–01. When the insured attempted to collect under the policy in 1984, the insurer sought a declaratory judgment from the state court that it was not obligated to pay benefits to the insured. As in the case at bar, the insurer's incontestability clause contained the latter clause authorized under New York law.

In holding that the incontestability clause barred the insurer from disclaiming coverage under the policy, despite the (obviously material) misrepresentations contained in the insured's application, the *Monarch* court reasoned as follows:

The [Insurer] may not complain of rigor or unfairness of this application of the law. It could have protected itself against a situation of this kind by incorporating in its policy the language authorized by clause (a) of the Insurance Law (§ 164, subd. 3, par. [A], subpar. [2] [now 3216(d)(1)(B) ] ), which reads: "After two years from the date of issue of this policy no misstatements, *except fraudulent misstatements*, made by the applicant ... shall be used to void the policy or to deny a claim for ... disability ... commencing after ... such two year period."

"[a]ccident and health insurance," means (i) insurance against death or personal injury by accident or by any specified kind or kinds of accident and insurance against sickness, ailment *or bodily injury* ... and (ii) non-cancellable disability insurance, meaning insurance against disability resulting from sickness, ailment or bodily injury (but excluding insurance solely against accidental injury) under any contract which does not give the insurer the option to cancel or otherwise terminate the contract at or after one year from its effective date or renewal date.

N.Y. Ins. Law § 1113(a)(3) (McKinney 1985 & Supp.1997).

*Id.* at 102 (quoting *Rackear v. Springfield Fire & Marine Ins. Co.*, 48 Misc.2d 707, 265 N.Y.S.2d 715, 718 (1st Dep't 1965)). The *Monarch* court concluded that

> if [the insurer] had wanted to obviate the use of the two-year Statute of Limitations in the incontestability clause, it could have availed itself of the Time Limitation on Certain Defenses clause in § 3216(d)(1)(B). This would have given it the right to defend upon the ground of false and fraudulent misrepresentations by the insured in the application. . . .

*Id.; see also Berkshire Life Ins. Co. v. Weinig*, 290 N.Y. 6, 47 N.E.2d 418, 420–21 (1943)("Had it been the intent of the [insurer] to except fraud in the inception of the contract from the operation of the two-year incontestability clause, it would have been a simple matter to have inserted a provision to that effect which it had the power to do. . . ."); *Apter v. Home Life Ins. Co. of New York*, 266 N.Y. 333, 194 N.E. 846, 847–48 (1935)(holding one-year incontestability clause contained in disability policy amounted to stipulation that fraud by assured would not render policy invalid once year elapsed).

In seeking to escape the confines of the incontestability clause, Defendant relies solely upon *Simpson v. Phoenix Mut. Life Ins. Co.*, 24 N.Y.2d 262, 299 N.Y.S.2d 835, 247 N.E.2d 655 (1969). *Simpson* involved a group life insurance policy secured by the insured's employer. *Id.* 299 N.Y.S.2d at 837–38, 247 N.E.2d at 656. The policy contained a provision that only full-time employees working at least thirty hours per week were eligible. *Id.* Enrollment, however, was done in a haphazard way. Enrollment cards were distributed to the employees, and the cards were forwarded to the insurer. The plaintiff insured then received his certificate of insurance. *Id.* After the plaintiff insured was killed, the insurer discovered that the insured was not a full-time employee. *Id.* The insurer, of course, sought to deny benefits, maintaining that eligible employment was "a limitation [of the risk] rather than a condition." *Id.* The *Simpson* court made a distinction between "conditions of insurance," which must be borne by the insurer "if not discovered and contested within two years of

issuance of the policy," and "those hazards considered limitations on the risk an insurer is willing to assume and, therefore, not barred by the lapse of time." *Id.* 299 N.Y.S.2d at 839, 247 N.E.2d at 657. The court explained that "[r]isks which are considered limitations are those which could not be ascertained by the insurer by investigation at the time the policy of insurance was issued." The court elaborated as follows:

> [I]f the additional risk to the insurer of issuing a policy to a particular applicant could have been discovered at the time the contract was entered into, the insurer is precluded from raising this fact as a defense after the period provided for in the incontestable clause has elapsed. It is only those risks which could not be ascertained at the time of contracting which can properly be viewed as a limitation on the risk of insurance. Where an insurer cannot guard against assuming a risk it does not desire to insure by the simple expedient of investigating, such as risks of death in noncommercial aviation and while on active military duty, then the risk is properly classified as a limitation for purposes of analysis with respect to the incontestable clause.

*Id.* 299 N.Y.S.2d at 839–40, 247 N.E.2d at 658. In the present case, Defendant contends that Plaintiffs past drug use was a limitation on the risk of insurance because it had no way of ascertaining such use within the two-year contestable period. Therefore, the argument goes, the incontestability clause contained in Plaintiff's Policy does not prevent Defendant from interposing claims grounded upon Plaintiff's alleged material misrepresentations.

In so arguing, however, Defendant gives short shrift to the terms of the incontestability clause itself. In clear and unambiguous language, the clause at issue states that Defendant would not contest the statements contained in the application after two years elapsed from the date of issuance. Yet, Defendant seeks to do just that. Moreover, *Simpson* is distinguishable from the instant case because it dealt with life insurance and, correspondingly, was governed by Section 3203. The governing provision here, namely, Section 3216, gave Defendant an opportunity to insert an incontestability clause

enabling it to contest fraudulent misstatements after two years. Defendant, however, did not avail itself of the opportunity. To permit attacks on the statements contained in the Policy application at this juncture would render meaningless the obvious differences in language authorized by the New York State Legislature with respect to incontestability clauses in health insurance policies. Finally, it is well-settled law that any ambiguity in the terms of an insurance policy (which the Court submits there is not here) must be construed in favor of the insured. *See, e.g., Guardian Life Ins. Co. of America v. Schaefer,* 70 N.Y.2d 888, 524 N.Y.S.2d 377, 378, 519 N.E.2d 288, 289 (1987); *Fischer,* 458 F.Supp. at 944 (applying rule with respect to interpretation of incontestability provision in disability policy).

## CONCLUSION

For the reasons discussed herein, the Court adopts the rationale of the *Rackear* and *Monarch* cases and respectfully reports and recommends that Defendant's motion for leave to amend the Answer with counterclaims be **DENIED.**[3]

## NOTICE

Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a copy to the undersigned within 15 days of the date of this Report. Failure to file objections within this period waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir.1996); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 299 (2d Cir.1992); *Small v. Secretary of Health and Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989)(per curiam).

March 21, 1997.

---

3. The Court sees no need to address Plaintiff's untimely filing of his opposition papers to the motion. Even were the Court to disregard Plaintiff's opposition, it still retains the authority, and indeed the responsibility, to reject legally insufficient claims.