[669 NYS2d 599]

Equitable Life Assurance Society of the United States,
Respondent, v Mark S. Madis, Appellant.

First Department, March 12, 1998

APPEARANCES OF COUNSEL

*Michael Yoeli* of counsel *(Gordon & Silber, P. C.,* attorneys), for respondent.

*Lance J. Kalik* of counsel *(Edward P. Souto* on the brief; *Grogan, Souto & Schonberg, P. C.,* attorneys), for appellant.

## OPINION OF THE COURT

ROSENBERGER, J.

This is an action by The Equitable Life Assurance Society of the United States (Equitable) for a judgment declaring that defendant insured Mark S. Madis, M.D. (Madis) is not entitled to benefits pursuant to two reinstated noncancelable disability insurance policies. Equitable's denial of coverage is based solely on the reinstated policies' exclusion of coverage for disabilities caused by pre-existing conditions. Madis counters that since the disability occurred more than two years after the date of reinstatement, he is protected by the incontestability clause. The case thus turns on whether Insurance Law § 3210 extends the incontestability clause set forth in section 3216 (d) (1) (B) (ii) to reinstated insurance policies.

Madis purchased the disability policies at issue on May 12, 1989. On October 10, 1992, he injured his right elbow in an automobile accident. Although he experienced periodic discomfort thereafter, he did not believe his injury was serious enough to impede his ability to work as a surgeon.

For reasons unrelated to this appeal, Madis had to reinstate the policies on November 17, 1993. By notice of claim dated December 17, 1995, he notified Equitable that he had become disabled on December 7, 1995, after surgery on his elbow revealed that he had torn a ligament as a result of the accident. By letter dated April 22, 1996, Equitable disclaimed coverage on the grounds that the injury causing the disability was sustained prior to the reinstatement of the policies.

Equitable then commenced this declaratory judgment action. Madis raised the defense of incontestability. The IAS Court agreed with plaintiff's interpretation of the policy language, but held that summary judgment was precluded by questions of fact concerning the date and scope of defendant's disability, and the reason for reinstatement.

On appeal, both parties agree that the only question is the correct legal interpretation of sections 3210 and 3216 (d) (1) (B) (ii) and the relationship between these provisions. We note at the outset that when a policy is subject to more than one reasonable interpretation, ambiguities should be construed against the insurer (*Berkshire Life Ins. Co. v Weinig*, 290 NY 6, 10). Because we find defendant's interpretation to be far more straightforward and compelling, we reverse the IAS Court's order and grant summary judgment to defendant.

As required by section 3216 (d) (1) (B), the subject policies contained the following language under the heading "INCON-TESTABILITY":

"After this Policy has been in force during your lifetime for two years from its Effective Date, we cannot contest it for misstatements in the application.

"The two years will not include any period during which you are disabled.

"No claim for loss incurred or disability that starts after two years from the Effective Date will be reduced or denied on the grounds that a sickness or a physical condition existed prior to the Effective Date. This will not apply if such sickness or condition was excluded from coverage by name or specific description on the date of loss."

The above paragraphs correspond to section 3216 (d) (1) (B) (i) and (ii), respectively. The Legislature designed the incontestability clause to balance the interests of insurer and insured. The two-year period gives the insurer a reasonable time to investigate, while allowing the insured to plan his financial future without the risk of unexpected denial of coverage many years after the inception of the policy (*Simpson v Phoenix Mut. Life Ins. Co.*, 24 NY2d 262, 266).

Section 3210, which is entitled "Incontestability after reinstatement," provides: "Any policy of life or non-cancellable disability insurance or contract of annuity delivered or issued for delivery in this state that is reinstated shall be incontestable after the same period following reinstatement and with the conditions and exceptions provided in the policy or contract

with respect to incontestability." This Court has previously held that the incontestability clause applies to reinstated policies. In *Kear v Prudential Ins. Co.* (2 AD2d 71, 74, *affd* 3 NY2d 959), we held that after two years from the date of reinstatement, an insurer could not disclaim coverage under a reinstated life insurance policy on the basis of misrepresentations in the reinstatement application.

Recognizing this controlling precedent, Equitable does not deny that section 3210 clearly applies to section 3216 (d) (1) (B) (i), the provision of the incontestability clause relating to the insurer's right to cancel the policy for misrepresentations. However, it argues that section 3210 *only* applies to this provision and not to section 3216 (d) (1) (B) (ii), the provision concerning the insurer's right to deny coverage for a pre-existing condition. This interpretation lacks merit.

Section 3210 speaks broadly of "the conditions and exceptions provided in the policy or contract with respect to incontestability." The plain language of the statute draws no distinction between the different protections of the incontestability clause.

Moreover, the Legislature's concern that the insured should be protected from excessive litigation is equally applicable whether coverage is being denied for a pre-existing condition or for misstatements in the policy: whatever the reason, the result is the same from the insured's point of view, namely, that the disability coverage on which he relied has unexpectedly been denied. Under Equitable's theory, while an original policy would be immune from the insurer's pre-existing conditions challenge after two years, a reinstated policy would never be immune. The very existence of section 3210 strongly suggests that the Legislature did not contemplate such drastic consequences following reinstatement.

Equitable also relies on section 3216 (d) (1) (D), which dictates the policy language relating to reinstatement. That provision states, in pertinent part: "The reinstated policy shall cover only loss resulting from such accidental injury as may be sustained after the date of reinstatement and loss due to such sickness as may begin more than ten days after such date." Plaintiff claims that this language gives it the right to deny coverage based on pre-existing conditions under a reinstated policy in perpetuity. However, defendant's interpretation is far more in harmony with the expansive language of section 3210.

The quoted provision is simply analogous to the provision in the original policy that denied coverage for pre-existing condi-

tions. Section 3216 (d) (1) (D) serves to inform the insured that in determining whether a condition is "pre-existing," the critical date is the date of reinstatement, not the date of the original policy. Otherwise, the insured might mistakenly suppose that he was covered for a condition that arose after the original policy had lapsed, but before reinstatement, because it was not "pre-existing" with respect to the original coverage date.

Section 3216 (d) (1) (D) resets the clock, but in and of itself offers no reason why the exclusion it describes should be available to an insurer after the reinstated policy has become incontestable. In addition, while section 3210 is expressly subject to the conditions and exceptions of the policies' incontestability provisions, it is not expressly subject to the conditions and exceptions with respect to the policies' reinstatement provisions. Thus, both the statutory language and the legislative intent support defendant's argument that section 3210 is to be read as a limitation on section 3216 (d) (1) (D) and not the other way around.

Finally, the IAS Court wrongly accepted Equitable's argument that the reinstated policies' section 3216 (d) (1) (D) exclusion for pre-existing conditions meant that Madis's disability was a "condition * * * excluded from coverage by name or specific description," rendering section 3216 (d) (1) (B) (ii) inapplicable as provided therein. We rejected this exact argument in *Monarch Life Ins. Co. v Brown* (125 AD2d 75, 79). An example of an exclusion "by name or specific description" would be a provision excluding coverage for "elbow injury" or "torn ligaments." If a general exclusion for pre-existing conditions were deemed sufficiently specific to fall under this section 3216 (d) (1) (B) (ii) exception to incontestability, that entire provision would be rendered meaningless: its second sentence would make its first sentence inapplicable in all cases.

Accordingly, the order, Supreme Court, New York County (Charles Ramos, J.), entered March 26, 1997, denying defendant's motion for summary judgment dismissing the complaint and granting his counterclaims, should be reversed, on the law, with costs, summary judgment granted to defendant with respect to a declaration in his favor and a finding of plaintiff's liability on the counterclaims in accordance with the decision herein, and the matter remanded for a determination of damages.

SULLIVAN, J. P., WALLACH and ANDRIAS, JJ., concur.

Order, Supreme Court, New York County, entered March 26, 1997, reversed, on the law, with costs, summary judgment

granted to defendant with respect to a declaration in his favor and a finding of plaintiff's liability on the counterclaims in accordance with the decision herein, and the matter remanded for a determination of damages.