**Robert GOLDBERGER,
Plaintiff–Appellant,**

v.

**PAUL REVERE LIFE INSURANCE
CO., Defendant–Appellee.**

No. 98–7707.

United States Court of Appeals,
Second Circuit.

Argued Oct. 20, 1998.

Decided Jan. 22, 1999.

ROBERT E. GOLDBERGER, M.D., pro se, Roslyn, NY, for Plaintiff–Appellant.

THOMAS J. MULLIGAN and JOSEPH P. AUGUSTINE, New York, N.Y. (Windels, Marx, Davies & Ives, on the brief), for Defendant–Appellee.

Before: OAKES and WALKER, Circuit Judges, and KNAPP, Senior District Judge.*

* Honorable Whitman Knapp, of the United States District Court for the Southern District of New York, sitting by designation.

KNAPP, Senior District Judge:

In this diversity case, Plaintiff Robert Goldberger, M.D. ("Plaintiff"), held an occupational disability policy entitled "The Professional Executive Insurance Policy" (the "Policy") issued by the Defendant, Paul Revere Insurance Company ( the "Company"), and made a claim thereunder. The District Court (Jack B. Weinstein, *Senior District Judge* ) granted the Company's motion for summary judgment and dismissed the complaint. For reasons that follow, we set aside the order dismissing the complaint and remand the case for trial. In considering this matter we shall, as we must, accept all of Plaintiff's allegations as valid and draw all reasonable inferences in his favor.

## The Policy

The Policy, which was issued by the Company to Plaintiff on June 18, 1973, consists of four separate documents: (1) the Policy itself; (2) the application for insurance; (3) an amendment attached to the Policy which defines the term "Total Disability"; and (4) an explanatory letter similarly attached further defining those words. A provision of the Policy itself specifically incorporates the other three documents.

As so expanded, the Policy insures "against loss commencing on or after the Date of Issue and while this policy is in force from injury or sickness as defined herein." It cannot be canceled nor its premiums increased until the insured reaches the age of sixty-five. No restrictive riders or changes in its provisions are permitted. The "Policy Schedule" sets out the benefits and premiums. For the Plaintiff, the Schedule specifies that for total disability from sickness, his benefit is $2,000 per month, beginning on the 91st day of disability, with a maximum benefit period to age sixty-five. Further, because Plaintiff opted for supplementary coverage for disability due to sickness after age sixty five, he has additional benefits of $1,000 per month, beginning at age sixty-five, with a lifetime maximum benefit period.

According to the Policy, "sickness" means "sickness or disease which first manifests itself while this policy is in force." The Policy further provides that total disability due to sickness exists "[i]f such sickness results in continuous total disability while this policy is in force and requires the regular and personal attendance of a licensed physician." The Policy states that " 'Total Disability' means that, as a result of such injury or sickness, the Insured is completely unable to engage in his regular occupation."

Plaintiff's "Application for Insurance" shows his "Occupation and Description of Duties" to be "General and Vascular Surgery"; and elsewhere in the Application under "Occupation," it specifies "Physician–General Surgeon/Vascular Surgeon." The amendment defining the term "Total Disability" is in two parts, one dealing with insureds under the age of sixty-five, and the other with insureds over that age. The first of these parts, here applicable, merely repeats the provision as stated in the Policy itself: " 'Total Disability' means that, as a result of such injury or sickness, the Insured is unable to perform the duties of his regular occupation."

The explanatory letter consists of a printed form with a blank to be filled in when the Policy is issued to a particular insured. In the following quotation from this letter, the words filled into that blank are emphasized:

During the initial period of disability, total disability is defined as the inability of the insured to perform the duties of his regular occupation due to injury or sickness. When the insured is engaged in a specialty, such as **General Surgery–Vascular Surgery** and is unable because of injury or sickness to perform the duties of his specialty, we consider him to be totally disabled. This definition is applicable until you reach the age of sixty-five.

In summary: For a claimant under sixty-five years of age, the Policy requires only that it be established that when a claim is made the claimant is under the care of a licensed physician and is suffering from an illness, first manifested while the Policy was in force, which renders the claimant "unable to perform the duties of his regular occupation." For a claimant engaged in a specialty, that specialty is considered to be his or her "regular occupation."

## Plaintiff's Activities

In June 1973, three years into his surgical practice, Plaintiff purchased the Policy. He was then 36 years old. The Policy was not issued in connection with any hospital or clinic where the Plaintiff performed surgery; rather it was a private policy purchased by the Plaintiff. On the Application for Insurance (which, as we have noted, was made a part of the Policy itself), he stated his occupation to be "Physician-general surgeon/vascular surgeon."

Plaintiff practiced surgery continuously until 1986. Then, at age 50, he began to experience premature atrial contractions, and took a "sabbatical" from surgery, which lasted for two years and two months. In 1988 he returned to the practice of surgery, specializing in breast cancer surgery. In 1989 he was diagnosed as having atrial fibrillation, paroxysms of rapid irregular heartbeat causing shortness of breath. In September of that year-due to this heart condition-he again left surgery and secured a position as Acting Medical Director at Choice Care, an HMO. He served in that position for two years and four months, resigning effective January 3, 1992. During his tenure at Choice Care, his heart condition worsened. From 1989 when the condition was first diagnosed until 1993, Plaintiff was under the care of cardiologist Halbert Feinberg, M.D. Since then, he has been under the care of cardiologist Alan Rosenberg, M.D., who once hospitalized him in an unsuccessful attempt to convert his heart to a normal rhythm. Plaintiff asserts that "[b]y November 1994, the frequency and severity of the attacks had progressed to the point where I realized I could never return to surgery."

On January 25, 1995, when 58 years old, Plaintiff applied to the Company for total disability benefits due to sickness. On the Attending Physician's Statement, one of the documents required by the Company to be submitted with this claim, Dr. Rosenberg described Plaintiff's medical condition, and stated that he was "totally disabled." The Company, apparently finding in the Policy a latent requirement that the insured be engaged in his or her regular occupation at the time of a claim, denied Plaintiff's claim solely on that ground. At page 6 of its brief to this Court it states that "Paul Revere denied Plaintiff's claim, since Plaintiff was not engaged in, or regularly occupied as, a general/vascular surgeon at the time of claim...."

## New York Insurance Law

In this diversity case, New York substantive law controls. *Erie R. Co. v. Tompkins,* (1938) 304 U.S. 64, 78–80, 58 S.Ct. 817, 82 L.Ed. 1188.

As to New York insurance law, "In New York State, an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract. If the provisions are clear and unambiguous, courts are to enforce them as written. However, if the policy language is ambiguous, particularly the language of an exclusion provision, the ambiguity must be interpreted in favor of the insured." *Village of Sylvan Beach v. Travelers Indemnity Co.,* (2d Cir.1995) 55 F.3d 114, 115. *See also Blasbalg v. Massachusetts Casualty Ins. Co.,* (E.D.N.Y.1997) 962 F.Supp. 362, 368 ("Disability policies are to be given practical application, consistent with New York's declared policy that 'the terms of an insurance policy will receive the construction most favorable to the insured.'") *citing Niccoli v. Monarch Life Ins. Co.,* (Sup.Ct. Kings Co.1972) 70 Misc.2d 147, 332 N.Y.S.2d 803, 806, *aff'd,* 45 A.D.2d 737, 356 N.Y.S.2d 677 (2d Dep't 1974), *aff'd,* 36 N.Y.2d 892, 372 N.Y.S.2d 645, 334 N.E.2d 594 (1975); *Magee v. Paul Revere Life Ins. Co.,* (E.D.N.Y.1997) 172 F.R.D. 647, 652–53 (The court refused to consider the Company's claim that a policy similar to the one at bar had been obtained by fraud because: "Defendant [had] an opportunity to insert an incontestability clause enabling it to contest fraudulent misstatements after two years .... [and] Defendant ... did not avail itself of the opportunity."); *Monarch Life Ins. Co. v. Brown,* (1st Dep't 1987) 125 A.D.2d 75, 512 N.Y.S.2d 99, 103 ("A policy which is subject to more than one reasonable interpretation must be interpreted to resolve the ambiguity against the insurer and in favor of the policyholder. It is **black letter law** that if the insurer intends to exclude

183

liability, such intention must be clearly expressed." (Emphasis ours.)).

■ Guided by such "black letter law," a finder of fact applying the provisions of the Policy, accepting all Plaintiff's assertions as true and making all reasonable inferences in his favor could conclude that Plaintiff was entitled to prevail on his assertion that he was suffering from a sickness which had "first manifest[ed] itself while [the Policy was] in force" and that at the time of making his claim, he was under the "regular and personal attendance of a licensed physician" who found him to be "totally disabled." It follows that summary judgment in the Company's favor cannot stand.

In coming to an opposite conclusion, the District Court cited two cases *Kunstenaar v. Connecticut Gen. Life Ins. Co.,* (2d Cir.1990) 902 F.2d 181 and *Brumer v. National Life of Vermont,* (E.D.N.Y.1995) 874 F.Supp. 60, *reconsideration denied,* 899 F.Supp. 120, *aff'd by summary order sub nom. Brumer v. Paul Revere Life Ins. Co.,* (2d Cir.1998) 133 F.3d 906. The court also referred to "many other cases." Neither of the two cited cases is here applicable. In *Kunstenaar,* the policy-unlike the one before us-was not a personal policy, but one purchased by the claimant's employer, which provided that it would terminate at "Termination of Employment," and would cover only disability commencing before such Termination. The claimant was denied benefits because he was found not to have been disabled before Termination. *Brumer* dealt with policies which specifically required a policyholder claiming disability to establish that he or she was actively engaged in his or her regular occupation "at the time such disability begins." 874 F.Supp. at 62. As we have seen, the Policy before us has no language suggesting such a requirement. With respect to the "many other cases" to which the District Court referred, assuming them to have been the ones the Company has cited to us, none is here applicable. Not one of them deals with an insurance policy even remotely like the one before us, which so far as concerns the timing of a sickness suffered by an insured, requires only that his or her "sickness first manifest[ed] itself while this [P]olicy [was] in force."

**Conclusion**

We set aside the grant of summary judgment in favor of the Company, and remand for further proceedings not inconsistent herewith.