**OLIN CORPORATION, Plaintiff–Appellee–Cross–Appellant,**

v.

**CERTAIN UNDERWRITERS AT LLOYD'S LONDON and LONDON MARKET INSURANCE COMPANIES, Defendants–Appellants–Cross–Appellees,**

Commercial Union Insurance Company, as successor to Employers Liability Assurance Corporation, Ltd., and Employers Commercial Union Insurance Company America, Continental Casualty Company, Employers Insurance Company Of Wausau, C.E. Health Compensation & Liability Insurance Company, as Successor to Falcon Insurance Company, Federal Insurance Co., Fireman's Fund Insurance Company, Great American Insurance Company, Lexington Insurance Company, London & Edinburgh Insurance Company, Ltd., Capital Markets Assurance Corp., as successor to National American Insurance Company of New York, successor to Stuyvesant Insurance Company, North River Insurance Company, Allstate Insurance Company, as successor to Northbrook Excess and Surplus Insurance Company, Hanover Insurance Company, as successor to Massachusetts Bonding and Insurance Company, American Home Assurance Company, American Re–Insurance Company, AIU Insurance Company, Continental Corporation, Harbor Insurance Company, National American Insurance Company of California, as successor to Stuyvesant Insurance Company, New York Property/Casualty Insurance Securities Fund, National Union Fire Insurance Company of Pittsburgh, PA, Defendants,

Aetna Casualty & Surety Company, General Reinsurance Corporation, Government Employees Insurance Company, Granite State Insurance Company, Home Insurance Co., Indemnity Insurance Company of North America, Integrity Insurance Company, Greenwich Insurance Company, as

successor to Harbor Insurance Company, National Casualty Company, and Transit Casualty Company, Counter–Defendants,

Olin–Hunt Specialty Products, Inc., Third–Party–Defendant,

Insurance Company of North America, Counter–Claimant.

Nos. 08–5017–cv(L), 08–5238–cv(XAP).

United States Court of Appeals, Second Circuit.

Sept. 18, 2009.

Craig C. Martin, (Ian Heath Gershengorn, Jessica Ring Amunson, on the brief) Jenner & Block LLP, Chicago, IL and Washington, D.C., Alan E. Popkin, Michael H. Wetmore, David W. Sobelman, Jerry Ronecker, Joel B. Samson, Husch Blackwell Sanders LLP, St. Louis, MO, Stephen Dvorkin, Dickstein Shapiro L.L.P., New York, NY, for appellee.

John G. McAndrews, Mary Ann D'Amato and Matthew B. Anderson, Mendes & Mount, LLP, New York, NY, for appellant.

PRESENT: GUIDO CALABRESI, JOSÉ A. CABRANES, PETER W. HALL, Circuit Judges.

## SUMMARY ORDER

Defendants-appellants-cross-appellees Certain Underwriters at Lloyd's London and London Market Insurance Companies (collectively "defendants" or "LMI") appeal from the judgment of September 8, 2008 and from the order of September 25, 2008 denying LMI's motion for judgment as a matter of law or for a new trial. Plaintiff-appellee-cross-appellant Olin Corporation ("plaintiff" or "Olin") cross-appeals from the judgment of September 8, 2008 inasmuch as it declines to hold LMI liable for defense costs prior to Olin's settlement with its primary insurer. On appeal, defendants argue as follows: (1) the District Court erred when it denied LMI's motion for reconsideration of their previous motion for judgment as a matter of law on remand from this Court; (2) the District Court erred in its jury instructions when it improperly defined "property damage" and when it instructed the jury that the task of determining the amount of property damage in each period is "one of estimation"; (3) the District Court erred when it found that multi-year policies issued by LMI have a single deductible or underlying limit; and (4) the District Court erred when it found that LMI waived their "late notice" defense. Plaintiff, on cross-appeal, argues that the District Court erred in failing to require LMI to reimburse Olin for defense costs incurred prior to Olin's settlement with its primary insurer. We assume the parties' familiarity with the facts and procedural history of this case.

■ First, defendants argue that the District Court erred when it denied LMI's motion for reconsideration of their previous Rule 50 motion for judgment as a matter of law, Fed.R.Civ.P. Rule 50(b), on remand from this Court and instead grant-

ed a new trial.[1] *See generally Olin Corp. v. Certain Underwriters at Lloyd's,* 468 F.3d 120 (2d Cir.2006) *("Olin I").* Our decision in *Olin I* stated that "a new trial is almost certainly required" but also that the District Court should review the record to determine if "Olin has introduced any evidence by which a rational juror could conclude [that] property damage . . . ended before remediation." *Id.* at 132. If Olin had presented evidence sufficient to meet this burden, then the District Court should hold a new trial. In the first trial, Olin had introduced evidence that active contamination at the Niagara Falls site was complete by 1957—forty years before Olin began remediation in 1997. Although it is arguable that some passive contamination occurred for years after the active contamination was complete, we conclude that a rational juror could reasonably find that passive contamination ended at some point before 1997. Olin presented similar evidence for the other relevant sites. For this reason, the District Court did not err in denying LMI's motion and instead ordering a new trial.

■ Next, defendants contend that the District Court improperly instructed the jury on the definition of "property damage." We review a district court's jury instructions *de novo,* determining "whether considered as a whole, the instructions adequately communicated the essential ideas to the jury." *United States v. Schultz,* 333 F.3d 393, 414 (2d Cir.2003) (alteration and quotation marks omitted). In our opinion in *Olin I,* we clearly outlined the proper definition of "property damage." Specifically, we held that "property damage occurs as long as contamination continues to increase or spread, whether or not the contamination is based on active pollution or the passive migration of contamination into the soil and groundwater." *Olin I,* 468 F.3d at 131. In its instructions to the jury during the second trial, the District Court stated in relevant part:

> To illustrate [the definition of passive contamination], if Olin introduces pollutants into an area during a given year and if by the force of nature the area of contamination grows or if the contamination moves into a new area and if this occurs in a subsequent year, then there is new property damage during that subsequent year to the extent of the growth or movement into the new area. If such a process keeps on happening year after year, there is new property damage in each of those years. If the contamination moves into a new area in a given year, there is new property damage, increasing what Olin must remedy and so increasing Olin's liability.
>
> Let us not forget that the question is always whether there is new property damage which increases Olin's liability. This relates to the ultimate question of

---

1. We generally review motions for reconsideration under an "abuse of discretion" standard. *See Devlin v. Transp. Commc'ns Int'l Union,* 175 F.3d 121, 131 (2d Cir.1999); *cf. Sims v. Blot,* 534 F.3d 117, 132 (2d Cir.2008) ("A district court has abused its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or rendered a decision that cannot be located within the range of permissible decisions." (internal citation, alterations, and quotation marks omitted)). In this case, however, the District Court considered the motion after we reviewed and refined the definition of "property damage" in *Olin Corp. v. Certain Underwriters at Lloyd's,* 468 F.3d 120 (2d Cir. 2006) *("Olin I").* Because the District Court was applying this new definition, we conclude that its review of the motion for reconsideration was more akin to a review of a motion for judgment as a matter of law. We review a district court's ruling on Rule 50 motions for judgment as a matter of law *de novo, see, e.g., Cobb v. Pozzi,* 363 F.3d 89, 101 (2d Cir.2004), and therefore review this ruling *de novo.*

whether in any given year a percentage of Olin's ultimate total liability for the particular site can be assigned to a given year and what is that percentage. Tr.1965–66.

When considering the jury instructions as a whole, we conclude that, though not a model of clarity, the jury instructions "adequately communicated the essential ideas to the jury," *Schultz*, 333 F.3d at 414, and did not "misled the jury regarding the applicable legal rule." *United States v. Ford*, 435 F.3d 204, 209–10 (2d Cir.2006). The instructions clearly stated that passive contamination was one cause of property damage and that LMI were responsible only for the damage that Olin ultimately remediated. For these reasons, we conclude that the District Court did not err when instructing the jury in this manner.

■ Similarly, LMI argue that the District Court improperly instructed the jury that the task of determining the amount of property damage in each period is "one of estimation." In *Olin I*, we held that the "costs of remediation should be allocated over the period in which property damage occurred, as nearly as possible according to the amount of property damage that occurred in each policy period." *Olin I*, 468 F.3d at 123. When instructing the jury, the District Court stated that the task of allocation of property damage across years in the policy period was "one of estimation, although surely estimation, not guesswork." Tr.1970. The District Court continued: "[A]ny finding you make obviously must be based on evidence, based on reason, and of course not mere guesswork." Tr.1971. Reasonable estimation, it seems to us, allocates property damage "as nearly as possible" to the actu-al amount of damage incurred in a given year—especially when much of the damage occurred a half century ago. Therefore, we conclude that the District Court did not err in giving this instruction.

■ Third, LMI argue that the District Court erred in holding that LMI's multi-year policies required only one deductible. We review the District Court's ruling of law *de novo*. *See, e.g., Somoza v. N.Y. City Dep't of Educ.*, 538 F.3d 106, 112 (2d Cir.2008). In its September 8, 2008 judgment, the District Court held that "[w]here there is one policy limit for a Multi–Year Policy, ... there is only one deductible or underlying limit for that period of time." The policy language that the parties provide states in relevant part: "Underwriters hereon shall only be liable for the ultimate net loss the excess of ... the *amounts* recoverable under underlying *insurances* ... (all hereinafter called the 'underlying *limits*') and then only up to a further $300,000.00 in all in respect of each occurrence." J.A. 845 (emphases added).[2] "When the provisions [of an insurance policy] are unambiguous and understandable, courts are to enforce them as written." *Parks Real Estate Purchasing Group v. St. Paul Fire and Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir.2006). Deciding "[w]hether a contract is ambiguous is a threshold question of law to be determined by the court." *Duane Reade, Inc. v. St. Paul Fire and Marine Ins. Co.*, 411 F.3d 384, 390 (2d Cir.2005). We find the plain language of the policy ambiguous. Because we must resolve any ambiguity "in favor of the insured," *Goldberger v. Paul Revere Life Ins. Co.*, 165 F.3d 180, 182 (2d Cir.1999); *see also Olin I*, 468 F.3d at 131 (applying this principle to sophisticated

---

2. We note, however, that the plaintiff's brief twice misquotes the policy by failing to make "insurance" and "limit" plural. Although we have no reason to believe that this is anything other than a drafting error, rather than a deliberate attempt to mislead the Court, we must remind counsel to use care in drafting.

parties), we must find in favor of Olin that there was only one underlying limit. For these reasons, we conclude that the District Court did not err in finding that where there was only one policy limit, there was only one underlying limit.

■ Fourth, LMI contends that the District Court erred when it held that LMI waived its "late notice" defense. Again, we review the District Court's ruling of law *de novo. See, e.g., Somoza,* 538 F.3d at 112. We have consistently held that under New York law, which the parties agree is applicable here, "an insurer is deemed, as a matter of law, to have intended to waive a defense to coverage where other defenses are asserted, and where the insurer possesses sufficient knowledge (actual or constructive) of the circumstances regarding the unasserted defense." *New York v. Amro Realty Corp.,* 936 F.2d 1420, 1431 (2d Cir.1991) (applying New York law). In this case, LMI expressly reserved certain rights regarding coverage upon receiving notice of the claim, J.A. 901, and had sufficient knowledge of the circumstances regarding the unasserted defense. We therefore conclude that the District Court did not err in holding that LMI waived its late notice defense.

■ Finally, on cross-appeal, Olin argues that the District Court erred in failing to require LMI to reimburse Olin for defense costs incurred prior to Olin's settlement with its primary insurer. The policy states, "The underwriter shall not be liable for expenses as aforesaid when such expenses are included in other valid and collectible insurance." Reading the plain language of the policy and resolving ambiguities in favor of the insured, we agree with the District Court's conclusion that the legal expenses incurred prior to the settlement were covered by other valid and collectible insurance and therefore that LMI are not liable for those legal expenses.

## CONCLUSION

For the reasons stated above, the judgment of the District Court is **AFFIRMED**.