FRANK ISAAC PLOTNER, Respondent, v. NORTHWESTERN NA-
TIONAL LIFE INSURANCE CO., a corporation, Appellant.

(183 N. W. 1000.)

**Insurance — insured's omission of one instance of consulting physician and
failure to state disease from which she was suffering held not a warranty
voiding policy.**

1.  Where an applicant for life insurance was requested in the ap-
plication therefor to name all causes for which she had consulted a
physician in the last ten years, and to give the name and address of
physician, the date of consultation, duration of disease and remaining
effects, and where, in her answer, she omitted to name one instance
when she consulted a physician; and further failed to state what, if any,
disease she then had, as informed thereof by the physician, it is *held*, for
reasons stated in the opinion, that her failure to do so was merely a rep-
resentation and not a warranty, and did not, in the circumstances con-
sidered in the opinion, operate to void the policy.

**Insurance — where policy incontestable after one year, there was no defense
thereon when premium paid.**

2.  The policy of insurance contained a provision, in substance, that,
after the expiration of one year from the date of issuance thereof, it
would be incontestable for any reason except the nonpayment of pre-
miums, as provided by the policy. It was not rescinded, nor any steps
taken to contest the same, until after the expiration of the year. It is *held*,
that, in these circumstances, there being no default in the payment of
premium, that there is no defense to an action for the recovery of the
amount specified in the policy.

Opinion filed July 22, 1921.

Appeal from a judgment of the District Court of Williams county,
and from an order denying judgment in defendant's favor on the special
verdict, *Fisk*, J.

Judgment affirmed.

*Fisk* & *Murphy*, for appellant.

"No oral or written misrepresentations made in the negotiation of a

contract or policy of insurance by the insured or in his behalf shall be deemed material or defeat or avoid the policy or prevent its attaching, unless such misrepresentation is made with actual intent to deceive, or unless the matter misrepresented increased the risk of loss." Compiled Laws, § 6501; Soules v. B. of Am. Yeoman, 19 N. D. 23; 120 N. W. 760; Donohue v. Mutual Life Ins. Co. 37 N. D. 210.

"Where the applicant is asked whether he consulted a physician, been prescribed for, or professionally treated he must answer truthfully and it is immaterial whether he was prescribed for on account of disease or only temporary or trivial ailment; this has been held to include medical treatment two years previous." 1 Bacon L. & Acc. Ins. § 284; citing many authorities under notes 386 and 387.

*Craven & Converse,* and *T. F. Burns,* for respondent.

Mut. Life Ins. Co. v. Buford, (Okla.) 160 Pac. 928.

"Where petition states and evidence shows, a good cause of action upon a policy of life insurance, containing a condition of non-forfeiture after two years from date of issuance of policy, and the only defense pleaded is breach of warranties contained in the application for the insurance, pleaded more than two years after policy became incontestible such breach constitutes no defense and the court should direct a verdict for plaintiff." 42 L. R. A. 249, note.

"If the insurer desired to avoid the policy, on the ground of misrepresentation * * * it should, in the absence of the consent on the part of the insured and the beneficiary, have taken legal steps to do so within the two years from the date of issuance of the policy and failing to do so * * * the policy was incontestable." Bibble v. Ins. Co. (Cal.) 149 Pac. 171; and cases therein cited; Clement v. Ins. Co. (Tenn.) 42 L. R. A. 247 and note, "Incontestability by terms of policy"; Patterson v. Ins. Co. (Wis.) 42 L. R. A. 253; Ins. Co. v. McGuinis, (Ind.) 101 N. E. 289; 45 L. R. A. (N. S.) 192; Duvall v. Ins. Co. (Idaho) 154 Pac. 632; L. R. A. 1917E, 333 and note at 338 and particularly subdivision of said note "Construction of clause as regards fraud," at p. 341.

GRACE, J. This is an appeal from a judgment in plaintiff's favor, for $2,200.45, entered on a special verdict, and from an order denying judgment in defendant's favor on a special verdict.

The action was brought to recover on a joint policy of life insurance,

issued by the defendant to plaintiff and wife on the 28th day of July, 1919. The complaint is in the ordinary form in such cases.

The answer admits that defendant is a foreign corporation, engaged in business in its special line, in the state of North Dakota, and that plaintiff and Amelia Victoria Plotner were, prior to the 28th day of July, 1919, and until decease of the latter, husband and wife. It admits the death of the latter, which occurred on December 15, 1919; that due proof of death was furnished to it, and that it refused payment of the claim. Otherwise, it interposed a general denial to the allegations of the complaint, and, in addition thereto, pleaded as part of its defense certain questions propounded by a medical examiner to the insured, and the answers given thereto by her. Those questions are as follows:

Name all causes for which you have consulted a physician in the last 10 years; illness, name and address of physician, date, duration, any remaining effects. Answer: Appendicitis; Dr. Sweitzer; St. Paul, 1915; 10 days; good recovery.

Have you had gallstones, or any disease of the liver? Answer: No.

Give full particulars of any other diseases or injuries you have had. Answer: None.

Are you now in good health as far as you know and believe? Answer: The best.

All of which answers are alleged as false and untrue, and made for the purpose of deceiving and defrauding the defendant.

The case was submitted to a jury for a special verdict, by 21 special questions. The first 6 of these are not necessary to discuss, as they relate to matters concerning which there is no controversy. The remainder and the answers thereto are as follows:

Question No. 7: Did Amelia Victoria Plotner, in her application for insurance to the defendant and in consideration therefor, expressly declare that all of her statements and answers as written or printed therein, and also in part 2 of such application, were full, complete, and true, whether written by her own hand or not? Answer: Yes.

Question No. 8: Did Amelia Victoria Plotner expressly agree that every such statement and answer is and was material to such risk? Answer: Yes.

Question No. 9: Were the following questions propounded to Amelia Victoria Plotner by the medical examiner and the following answers given thereto in said application? "Q. 7. Name all causes for which you

have consulted a physician in the last 10 years; illness, name and address of physician, date, duration, any remaining effects." To which she answered: "Appendicitis; Dr. Sweitzer, St. Paul; 1915; 10 days; good recovery." "Q. 8. Have you ever had gallstones or any disease of the liver?" To which she answered: "No." "Q. 9. Give full particulars of any other disease or injury you have had." She said: "None." "Q. 10. Are you in good health as far as you know and believe?" She answered: "The best." Answer: They were.

Question No. 10: Did the defendant company believe said answers and all of them to be true? Answer: Yes.

If you answer question No 10 in the affirmative, then answer No. 11.

Question No. 11: Did the defendant, in full reliance upon said answers being true, and not otherwise, issue and deliver said policy of insurance? Answer: Yes.

Question No. 12: Were said answers and all of them false? Answer: No.

Question No. 13: Were said answers, or any of them, false? Answer: No.

If you answer the last question in the affirmative, then answer question No 14.

Question No. 14: Which one or ones were false? Answer: ———.

Question No. 15: Were they known to be false by the said Amelia Victoria Plotner when made? Answer: No.

Question No. 16: Were they made with the corrupt and fraudulent intent of inducing the defendant to issue said policy of insurance? Answer: No.

Question No. 17: Did Amelia Victoria Plotner, on or about June 28, 1919, consult Dr. C. I. Oliver, a physician of Graceville, Minn.? Answer: Yes.

Question No. 18: Did the said physician at said time given her a thorough examination, consisting, among other things, of an X-ray examination of the stomach? Answer: Yes.

Question No. 19: Did said physician at said time diagnose Amelia Victoria's ailment as cholecystitis or gallstones? Answer: No.

Question No. 20: Did said physician at said time so inform Amelia Victoria Plotner of said diagnosis? Answer: No.

Question No. 21: Did the defendant company promptly upon learning of such facts rescind said contract of insurance, and tender back to the

plaintiff all premiums paid thereunder? Answer: Yes, after death of applicant.

The appellant assigns the following errors:

(1) The court erred in overruling defendant's objections to the admission in evidence of the testimony of the plaintiff and various other lay witnesses, tending to show that from their observations the insured was apparently enjoying good health in the summer of 1919.

(2) The court erred in denying defendant's motion for a directed verdict, made at the close of the testimony upon all the grounds and for all the reasons stated in said motion.

(3) The court erred in denying defendant's motion, made on December 28, 1920, on the minutes of the court, for judgment non obstante or for a new trial, based upon specifications of error served with notice of such motion.

(4) The court erred in overruling defendant's objection to the following question asked plaintiff: "Did you yourself have anything to do with the preparation of Exhibit E at all?"

The court erred in overruling defendant's objections to the following questions: "Q. I will ask you, Mr. Plotner, before you signed and delivered to the defendant company Exhibit F, you read or had read to you No. 13 thereof?" which is as follows: "When did you first notice or learn of any symptoms of failing health in deceased? In other words, before you signed that, was that specific question read by or to you?" Also: "And in answer to that question did you state to the party who wrote the answer therein, 'About a year'?"

It will not be necessary to set out a statement of the material facts, as they sufficiently appear from the special verdict. The assignments of error are so interrelated that a separate analysis of each is unnecessary, and hence all will be considered under a general discussion of the legal questions presented, which naturally arrange themselves in three groups, to wit: (1) Those relating to the reception or exclusion of evidence; (2) those relating to alleged fraud or deception, by Amelia Victoria Plotner, in procuring the policy of insurance to be issued; (3) those relating to the rulings of the court in denying defendant's motion for a directed verdict, and for judgment non obstante or for a new trial.

The defendant complains of the admission of certain evidence, given by several lay witnesses, in support of plaintiff's cause of action, which related to the state of health of the insured at the time she signed the ap-

plication, and during several months immediately preceding and several months immediately subsequent to that time. The tenor of this testimony is, as to her general appearance of health, her ability to do her ordinary housework on the farm where she and her husband lived, her participation in social affairs, and considerable other evidence of the same character, all of which tended to show that during said time she was in a normal state of health.

The evidence shows that plaintiff and his wife resided on a farm for about 14 years, near Tioga, Williams county. They were residing on this farm at the time the application was made. The mother of the deceased, Mrs. Theimer, resided near Graceville, Minn., where lived one Dr. Oliver. In the latter part of June, 1919, the insured visited her mother, Mrs. Theimer, and on or about June 28, 1919, visited Dr. C. I. Oliver, of Graceville, who examined her to ascertain her state of health, took an X-ray of her stomach, and who had her detail her health history. The evidence would seem to indicate that she had been having severe pains in the upper part of her stomach for some time prior to that time, having at times, after eating, a very uncomfortable feeling, and experiencing accumulation of gas in the stomach. Her mother, Mrs. Theimer, also testified by deposition to her having pains, and that she consulted Dr. Oliver, with reference thereto.

It is claimed Dr. Oliver diagnosed the trouble as cholecystitis, and that he so informed the insured, but the jury found that he did not do so. He prescribed for her. He testified that, so far as he could tell from examination, all her organs were normal, with the exception of the lining of the gall bladder. He found a little tenderness in the upper part of the stomach. She weighed from 165 to 170 pounds.

The defendant contends that all of the evidence of plaintiff given by the lay witnesses, relating to the condition of her health at or about the time above stated, was incompetent, irrelevant, and immaterial, and should not have been admitted to rebut what it claims to be the positive, undisputed, and conclusive evidence of Dr. Oliver, as to her condition at the time he made the examination.

It will be noticed, on reading Dr. Oliver's testimony, that he depends about as much on the personal history, as given him by the insured at the time she consulted him, as he did on his examination of her. In other words, the result at which he arrived was not wholly determined from his examination of her, but partly on the statements of her condition, as

she understood it. In these circumstances his testimony, to a considerable extent, may be regarded as opinion evidence. It was not by any means absolutely conclusive. It was some evidence as to the state of her health at that time, and the weight of it, as of all the evidence, was for the jury.

We are of the opinion it was proper to permit the introduction of evidence by lay witnesses as to the apparent condition of her health at the time of making the application, and for a reasonable time prior and subsequent thereto. Rondinella v. Metropolitan Life Ins. Co., 24 Pa. Super. Ct. 293; 7 Ency. of Evidence, 527, note 76, First Supplement; Baldi v. Metropolitan Ins. Co., 18 Pa. Super. Ct. 599; 5 Ency. of Evidence, 713; Reininghaus v. Merchants' Life Association, 116 Iowa, 364, 89 N. W. 1113; Stone v. Moore, 83 Iowa, 186, 49 N. W. 76; Tierney v. Minneapolis & St. Louis Railway Co., 33 Minn. 311, 23 N. W. 229, 53 Am. Rep. 35; Federal Betterment Co. v. Reeves, 77 Kan. 111, 93 Pac. 627, 15 Ann. Cas. 796; Perry v. Mutual Life Ins. Co., 143 Mich. 290, 106 N. W. 860; Johnson v. Union Pacific Railroad Co., 35 Utah, 285, 100 Pac. 390; Hubbard v. Mutual Reserve Fund Life Association, 100 Fed. 719, 40 C. C. A. 665.

We have examined other objections by defendant to the introduction of certain evidence, and its objections to rulings of the court on certain evidentiary matters complained of, and find no reversible error therein.

We are next to consider defendant's claim that the insured made false answers to certain questions contained in the application, with the intent to mislead, deceive, and defraud it, by inducing it to issue the policy, which it would not have done had true answers been given to the questions. In the application, insured was requested to name all causes for which she had consulted a physician in the last 10 years. See question 9 of the special verdict supra. The question required her to state the nature of the illness, the date, duration, and remaining effects of it, if any, and the address of the physician who attended her on those occasions, if any. Her answer to this was appendicitis; that the duration of the sickness was 10 days; that she had a good recovery; and that she was attended by Dr. Sweitzer, of St. Paul.

It will be noticed from what has above been stated that she did consult Dr. Oliver on June 28th, and that in the following month, on July 18, 1919, she signed the application.

Section 6501, C. L., provides:

"No oral or written misrepresentation made in the negotiation of a

contract or policy of insurance by the insured or in his behalf shall be deemed material or defeat or avoid the policy or prevent its attaching, unless such misrepresentation is made with actual intent to deceive, or unless the matter misrepresented increased the risk of loss."

The application and policy also declare the answers of the insured to questions contained in the application to be representations only. It is clear, under the terms of the policy, and the section above cited, that none of the insured's answers to the questions were warranties, but merely representations.

The question of whether there was any deception or fraud on the part of the insured in procuring the issuance of the policy was a question of fact for the jury. An examination of the special verdict will disclose that they found specifically that none of her answers were false, that she did not know them to be false, and that they were not made with any corrupt or fraudulent intent of inducing defendant to issue the policy. It is true she did not state she had consulted Dr. Oliver, but there are many reasons why she may have not done so. It is possible that she overlooked that matter at the time she gave the answers; and, further, being one of robust physique, weighing 160 to 170 pounds, and apparently in good health, as shown from the testimony of many witnesses, and having experienced only at times pains in the stomach, and the accumulation of gas, etc., as above mentioned, and being able to perform her ordinary household duties, which, of common knowledge, we know are not light in a farm home, she may have regarded the incident of seeing Dr. Oliver as trivial, not worthy to be mentioned. She may have regarded any ailment she had as of no consequence, temporary in character, and merely an indisposition which might occur in one of perfect health. In view of all the evidence and circumstances, the jury were warranted in finding that she made no false answers and committed no fraud.

As we view the matter, the evidence as a whole, on part of the defendant, fails to establish any intention on her part to defraud it, and wholly fails to establish fraud. She answered truthfully when she stated that she did not have gallstones. It also may be observed that statements by her as to whether she was in good health should be considered to a large extent the mere expression of an opinion. See Donahue v. Mutual Life Ins. Co., 37 N. D. 203, 164 N. W. 50, L. R. A. 1918A, 300.

Subdivision 15 of the policy is entitled "Policy Contains Entire Contract." The part that is material here is as follows:

"It is agreed that this policy shall constitute the entire contract between both parties, and that all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties, and that no such statements shall void the policy unless it is contained in the written application therefor, copy of which is attached when issued."

There is no stipulation in the policy that a misrepresentation, not constituting fraud, but which increases the risk, shall void the policy.

Part of § 6501 reads: "Or unless the matter misrepresented increased the risk of loss." This provision was made for the protection of insurance companies and for their benefit, but unquestionably it may be waived by them, and we think the defendant has done so in this case by specifically stipulating that the policy constitutes the entire contract between both parties. But, however this may be, the jury has made no finding that there was any increase of risk, and, further, has specifically found that the insured made no false answers.

There is another reason why the defendant is wholly prevented from avoiding its liability. Subdivision 20 of policy provides:

### "Incontestability.

"This policy shall be incontestable after one year from its date, except for nonpayment of premium."

There was no default in payment of premiums, so no question in that regard arises. The policy is dated the 28th day of July, 1919. This action was commenced by the issuance of a summons on July 31, 1920, and, together with the complaint. was served on the defendant August 3, 1920, by an admission of service by S. A. Olsness, Insurance Commissioner of this state.

It clearly appears, and in fact it is indisputable, that more than one year had elapsed since the issuance of the policy before any act was done or action taken by the defendant to contest it. Thus the defendant thereafter is, by the terms of its contract, precluded from voiding the policy for any cause whatever, except failure to pay the premium as provided in the policy.

A different question might arise if the incontestability clause became operative at the date of the issuance of the policy, so that, if there were

fraud in procuring the issuance thereof, there would be no opportunity to discover it before the policy became operative, but here the defendant had an entire year from the date of the policy in which to discover fraud, or any other sufficient cause, to rescind the policy and tender back the premium. It wholly failed to do so within that time, after which, by the terms of the contract, it had no right for any cause whatever, except the nonpayment of premium, to rescind it and void the policy.

In other words, after the expiration of a year, where there is no default in the payment of the premium, and thereafter the death of the insured should occur, the defendant has no defense against the collection or payment of the amount specified in the policy. It, in substance, has stipulated to that effect in its policy.

As above stated, the jury specifically found there was no fraud. That determined that question. We think it is a general rule, however, that, whatever form fraud may assume, or in whatever guise it makes its appearance, it is not countenanced by the court. Here, however, the defendant reserved a specific period of time, it must be presumed, within which to examine every reason, if any existed, why it should not continue the policy in force. If it had done so, it could perhaps have discovered within the year the facts with reference to the insured's consultation with Dr. Oliver. It did not, however, so far as this record shows, make any investigation of any kind or character, within the year as to the truth of any of the statements of the insured, made in her application, nor otherwise do any act looking toward rescinding the policy.

It is not a case where there were no means, opportunity, or possibility of discovering fraud. The incontestability clause is one, no doubt, used by the defendant as an inducement to those desiring to purchase insurance. It, no doubt, points out to them, by its agents, that by the terms of the policy after the expiration of the year there can be no defense of any kind or character interposed against the collection of the amount specified in the policy, in case the death of the insured should occur and proceedings were had to collect the amount specified in the policy, except only for the nonpayment of premium. The defendant ought not be permitted to lull the insured into a feeling of security by the use of the incontestability clause, and then endeavor to avoid its contract when death has forever sealed the lips of the insured, after having had the time specified by that clause to rescind the whole contract, which it wholly failed to do.

It would seem the same rule is applicable as that which obtains where

a suicide clause provides for nonliability in the event of suicide within one year after the issuance of the policy, with reference to which 14 R. C. L. at § 413 sets out the following:

"A provision in a policy for nonliability in the event of suicide within one year 'after the issuance' of the policy means a year after its date where premiums are paid from its date, and the other parts of the policy show that the day of its date was considered the day of its issuance."

The following cases are there cited in support of that principle: Anderson v. Mutual Life Ins. Co. of New York, 164 Cal. 712, 130 Pac. 726, Ann. Cas. 1914B, 903; Harrington v. Mutual Life Ins. Co. of New York, 21 N. D. 447, 131 N. W. 246, 34 L. R. A. (N. S.) 373.

"A provision that suicide shall be no defense to an action to recover the insurance money if the policy had been in force for one year at the time of the death relates to the time of the suicidal act, and therefore if the insured commits suicide while sane, after the expiration of one year from the date of the policy, the company is liable, even though it appears that the suicide was premeditated before the expiration of the year, and was delayed to avoid its effect on the policy."

So by analogy it would appear that, where as in this case the defendant specified that after the expiration of one year the policy would be incontestable, the premium having been fully paid and the policy being in full force and effect from its date, unless it rescinded and repudiated it within one year from its date, thereafter, under its stipulation, it had no defense against the payment of it, excepting only for the nonpayment of premium. It permitted the year and more to expire before it took any action to avoid and rescind the policy, and, there being no default in premium, it has, as before stated, no defense to the collection of the full amount of it. The incontestability clause is a part of the policy which is in evidence. The entire contract, including that clause, is to be construed to ascertain the intentions of the parties. Further discussion cannot further clarify this particular point. The intent and language of the clause is so plain that it construes itself. It is susceptible of but one meaning, and that is such as we have accorded it.

The trial court properly granted the motion of plaintiff for judgment on the special verdict, and properly denied a similar motion of defendant, as well as one for judgment non obstante. We have carefully examined all the errors assigned, and find none that are reversible. From what has been said, it is clear that the judgment appealed from should be affirmed.

It is affirmed. The respondent is entitled to his statutory costs and disbursements on appeal.

CHRISTIANSON, J., being disqualified, did not participate, *Hon. M. J. Englert,* one of the Judges of Fifth Judicial District, sitting in his stead.

BRONSON, J., concurs in result.

*Englert,* District Judge. I concur in the affirmance of this case, but I express no opinion on the question of whether or not the incontestable provision of the policy applies to those instances wherein the insured dies before the expiration of one year from the date of the policy.

ROBINSON, C. J., dissents.

BIRDZELL, J. (concurring specially). I concur in the affirmance of the judgment on the ground that the effect of the incontestable clause was to obviate the defense upon which principal reliance is placed to defeat liability on the policy. Since the defendant did not contest liability nor seek a rescission within the time provided in the policy itself, it is unnecessary, in my opinion, to consider the merits of the defense unsuccessfully urged in the lower court, and which is made the principal basis of this appeal. Obviously, if the incontestable clause operates to cut off the defense, its merits become moot as conceded by appellant's counsel.

Incontestable provisions in insurance policies are generally held valid as creating by contract a short statute of limitations in favor of the insured within which time the insurer must take affirmative action to cancel or rescind the contract. The clause in question fixes the date within which any such attempt may be made by the insurer as one year from the date of the policy, and it does not embrace the contingency of the lifetime of the insured. That is, it does not say that the policy shall be incontestable after one year from its date during the lifetime of the insured, but merely that it shall be incontestable after one year from its date. It is held in Monahan v. Metropolitan Life Insurance Co., 283 Ill. 136, 119 N. E. 68, L. R. A. 1918D, 1196, that the incontestable clause in a life insurance policy inures to the beneficiary after the death of the insured as much as it inures to the insured during his lifetime, and that even though some of the rights and obligations of the parties to the contract of insurance become fixed upon the death of the insured, the rights, as affected by the incontestable clause, do not become fixed at the date of the death. It is held that such clause continues operative for the period of time speci-

fied in the contract. In the instant case the policy is joint, insuring the lives of the plaintiff and the deceased. The contract was directly with the plaintiff as much as with the deceased. The reasons for holding that the incontestable clause operates in favor of the beneficiary  after the death of the insured apply with even greater force where the plaintiff is not merely a beneficiary, but a contracting party as well.

In the case of Ramsay v. Old Colony Life Insurance Co., 131 N. E. 108, decided April 21, 1921, the Illinois Supreme Court adhered to its decision in Monahan v. Metropolitan Life Insurance Co., supra, and held that the defendant, when sued upon the policy by the administrator of the insured, could not interpose the defense of fraud in procuring the contract if it did not act within the time stipulated in the policy, although the insured died within that time.  In my opinion, under such an incontestable clause as the one in question, any defense to liability on the contract which arises out of the transactions leading up to the policy must be asserted within the time prescribed.

While it is urged in this court that the plaintiff should not on appeal have the benefit of the incontestable clause, inasmuch as the matter was not suggested in the court below, it would seem that no useful purpose would be served by a reversal where, on the record as a whole, it clearly appears that the plaintiff is entitled to a judgment.  Occasionally new grounds may be resorted to in an appellate court for sustaining a judgment where they would not be heeded if relied upon for reversal. See 3 C. J. 738.