723 A.2d 891

The MUTUAL LIFE INSURANCE COMPANY OF NEW YORK

v.

INSURANCE COMMISSIONER FOR
THE STATE OF MARYLAND.

No. 103, Sept. Term, 1996.

Court of Appeals of Maryland.

Feb. 9, 1999.

Barrett W. Freedlander, Baltimore, for petitioner.

Dennis W. Carroll, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

David M. Funk, Bryan D. Bolton, Steven Jared Troy, Funk and Bolton, P.A., Baltimore, for Amici Curiae Paul Revere Life Ins. Co., Provident Life and Acc. Ins. Co. and Union Central Life Ins. Co.

Phillip E. Stano, American Council of Life Ins., Washington, DC, Debra A. Cohn, Health Ins. Ass'n of America, Washington, DC, Rita M. Theisen, Rocco N. Covino, LeBoeuf, Lamb, Greene & MacRae, L.L.P., Washington, DC, for Amici Curiae American Council of Life Ins. and Health Ins. Ass'n of America.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI *, RAKER and WILNER, JJ.

ELDRIDGE, Judge.

We issued a writ of certiorari in this case to decide whether an insurer may lawfully deny a disability claim, more than two years after the issuance of a disability insurance policy, on the ground that the disabling condition manifested itself prior to the effective date of the insurance policy, where the policy contains a statutorily required incontestability clause providing that no claim shall be denied on the ground that a disease

---

\* Karwacki, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and the adoption of this opinion.

or physical condition existed prior to the effective date of policy coverage.

## I.

On November 27, 1985, Mary Holland submitted an application to the Mutual Life Insurance Company of New York for a disability insurance policy which would provide monthly income benefits in the event that Holland became disabled while the policy was in force. The policy application made several inquiries about Holland's health history. In response to a question as to whether she had any previous history of mental or nervous disorders, Holland answered "no." Pursuant to the application, the insurer issued a disability insurance policy to Holland. The policy contained a statutorily required incontestability provision which stated:

"We may not reduce or turn down any claim for loss incurred or Disability starting after two years from the Policy Date on the grounds that a disease or physical condition existed prior to the Policy Date, unless that disease or physical condition is excluded from coverage by name or specific description."

This provision was included pursuant to the Insurance Code, Maryland Code (1957, 1994 Repl.Vol.), Art. 48A, § 441(2), which requires an insurer to include the following provision as a time limit on certain defenses:

"No claim for loss incurred or disability (as defined in the policy) commencing after two years from the date of issue of this policy shall be reduced or denied on the ground that a disease or physical condition not excluded from coverage by name or specific description effective on the date of loss had existed prior to the effective date of coverage of this policy." [1]

---

1. The Insurance Code has since been revised. Maryland Code (1997), § 15–208 of the Insurance Article, is new language derived without substantive change from former Article 48A, § 441. In this opinion we shall refer to the provisions in effect at the time this case was brought.

In the policy issued to Holland, the insurer defined "disability" as "either a Total Disability or a Partial Disability, provided that in either case the Disability starts while this Policy is in force." Both total and partial disability were defined as the insured not being able to work "because of injury or sickness." The policy defined "sickness" as a "sickness or disease which first manifests itself while this Policy is in force."

On June 6, 1989, almost four years after the policy's effective date, Holland filed a claim with the insurer for disability income benefits resulting from a condition diagnosed as "Acute and Chronic Anxiety with Panic Attacks." In a letter dated October 1, 1991, the insurer denied Holland's claim on the ground that Holland's disability was caused by a condition which first manifested itself prior to the effective date of the policy and that, therefore, the condition did not fall within the policy's definition of "sickness." The insurer reached this conclusion based on information provided by Holland's doctors that she had complained of "feelings of anxiousness" in 1985 and 1986. The insurer explained to Holland, in an October 18, 1991, letter reaffirming its position, that a "pre-existing condition would be one such as a congenital condition, which an individual could have without ever being aware of or, even have experienced symptoms of."

The parties in this case have stipulated that the sickness which caused Holland's disability, "Acute and Chronic Anxiety with Panic Attacks," manifested itself prior to the effective date of the policy and that the policy did not exclude this sickness from coverage by name or specific description. The parties also stipulated that Holland, when answering the questions on the insurance application, did not know that the sickness had manifested itself.

After the denial of her claim, Holland filed a complaint with the Maryland Insurance Administration. Following an investigation, the Administration issued an order deciding in favor of Holland. The Administration, by an Associate Commissioner, ordered the insurer to refrain from denying Holland's claim on the ground that the condition which caused her

disability first manifested itself prior to the effective date of the policy and ordered the insurer to pay Holland's claim. The Associate Commissioner reasoned that the plain meaning of the pertinent incontestability statute, Article 48A, § 441(2), includes "both those [pre-existing diseases and conditions] which have and have not manifested themselves." Consequently, the Associate Commissioner found that the insurer violated § 441(2) when it denied Holland's claim on the ground that the sickness first manifested itself prior to the effective date of the policy. Finally, the Associate Commissioner found that the Insurer's denial of Holland's claim violated Art. 48A, §§ 55(2)(i), 55(2)(iv), and 230A(c)(2).[2]

Pursuant to Art. 48A, § 35, the insurer sought review of the Associate Commissioner's order and a hearing before the Insurance Commissioner. By agreement of the parties, the Commissioner heard the case upon the parties' stipulation of facts and briefs. Thereafter, the Commissioner issued a Memorandum and Order enforcing the Associate Commissioner's order and requiring the insurer to pay Holland "all benefits due her under the policy." The Commissioner held that under § 441(2), incontestability extends to a pre-existing condition regardless of whether the condition manifested itself prior to the policy's effective date. The Commissioner stated that the insurer was seeking to avoid the "common sense result" of the incontestability clause by "defining disability as including only a sickness or disease which 'manifests itself' after the policy was issued." The Commissioner reasoned that a disease or condition clearly exists "whether it manifests itself or not." The Commissioner stated that the purpose of incontestability clauses is to achieve certainty as to coverage

---

**2.** Section 55(2)(i) authorizes the Insurance Commissioner to take certain actions against an insurer if the insurer "[v]iolates any provision of this article...."

Section 55(2)(iv) authorizes the Commissioner to take action against an insurer which, "[w]ithout just cause unreasonably refuses or delays payment to claimants of the amount due them."

Section 230A(c)(2) provides that it is a violation of the law for an insurer to refuse to pay a claim "for an arbitrary or capricious reason based on all available information."

and to avoid litigation. He pointed out that an insurance company can seek medical information before issuing the policy, can exclude specific illnesses, and can conduct such further investigation as it deems appropriate. Nevertheless, the Commissioner concluded, once the policy has been issued and has been in effect for two years, "the two year bar contained in § 441 prohibits [the insurer] from now denying the claim." The Commissioner decided that the insurer's refusal to pay benefits in this circumstance violated § 441(2) and also violated §§ 55(2)(i) and 55(2)(iv).

The insurer filed an action in the Circuit Court for Baltimore City for judicial review of the Insurance Commissioner's decision. Although stating that it agreed with the Insurance Commissioner's interpretation of Art. 48 A, § 441(2), the circuit court reversed the Insurance Commissioner's order that the insurer pay the claim. The circuit court apparently was of the view that the Insurance Commissioner had no authority to order payment of the claim.

Both parties appealed to the Court of Special Appeals. While upholding the circuit court's and Insurance Commissioner's interpretation of Art. 48A, § 441(2), the Court of Special Appeals reversed the circuit court's judgment with regard to payment of the claim. The Court of Special Appeals, in agreement with the Insurance Commissioner, held that the insurer "must pay Ms. Holland's claim." *Insurance Commissioner v. Mutual Life*, 111 Md.App. 156, 193, 680 A.2d 584, 602 (1996).

The insurer filed a petition for a writ of certiorari which this Court granted. *Mutual Life Insurance Co. of New York v. Insurance Commissioner*, 344 Md. 115, 685 A.2d 450 (1996). Essentially two questions are presented for our review. The first is whether an insurer is entitled to deny a disability claim on the ground that the condition first "manifested" itself prior to the effective date of the insurance policy despite the statutorily prescribed incontestability clause contained in § 441(2) which provides that no claim "shall be reduced or denied on the ground that a disease or physical condition not

excluded from coverage by name or specific description ... had existed prior to the effective date of coverage." The second question is whether the Insurance Commissioner has the authority to order the payment of the claim.

## II.

### A.

In the nineteenth century, some United States insurance companies began to offer incontestability clauses in their life insurance policies as an inducement to the purchase of life insurance. An early opinion, *Plotner v. Northwestern Nat. Life Ins. Co.*, 48 N.D. 295, 304, 183 N.W. 1000, 1003 (1921), observed:

> "The incontestability clause is one, no doubt, used by the defendant as an inducement to those desiring to purchase insurance. It, no doubt, points out to them, by its agents, that by the terms of the policy after the expiration of the year there can be no defense of any kind or character interposed against the collection of the amount specified in the policy, in case the death of the insured should occur and proceedings were had to collect the amount specified in the policy, except only for the nonpayment of premium. The defendant ought not be permitted to lull the insured into a feeling of security by the use of the incontestability clause, and then endeavor to avoid its contract when death has forever sealed the lips of the insured, after having had the time specified by that clause to rescind the whole contract, which it wholly failed to do."

*See also* Note, *AIDS and the Incontestability Clause*, 66 N. Dakota L. Rev. 267, 268 (1990).

Escalating public pressure caused states to enact laws requiring insurers to include such incontestability provisions. The first of these laws was enacted in New York in 1906. Laws of New York 1906, ch. 326. The reason such clauses were statutorily required

" 'lies in the early greed and ruthlessness of the insurers. All too often, instead of paying the beneficiary, they resisted liability stubbornly on the basis of some misstatement made by the insured at the time of applying for the policy, as to which they carefully refrained from comment until the insured had died and was unable to testify on his own behalf.' "

*Fischer v. Massachusetts Cas. Ins. Co.*, 458 F.Supp. 939, 944 n. 1 (S.D.N.Y.1978) (quoting 7 *Williston on Contracts*, § 912 at p. 394 (3d ed.1963)). *See also Oglesby v. Penn Mut. Life Ins. Co.*, 889 F.Supp. 770, 774 (D.Del.1995), *aff'd* 127 F.3d 1096 (3rd Cir.1997) (incontestability "clauses arose as a reaction to the 'early greed and ruthlessness of the insurers' . . . who were apt to deny benefits years after the policy had issued based on technicalities or pre-existing conditions"); *Estate of Doe v. Paul Revere Ins. Group*, 86 Hawai'i 262, 273, 948 P.2d 1103, 1114 (1997); *Schajer v. NML*, 304 N.J.Super. 394, 406, 701 A.2d 132, 138 (1997) ("The purpose was to meet widespread charges of corruption, fraud, and dishonesty in the insurance industry"); *Wischmeyer v. Paul Revere Life Ins. Co.*, 725 F.Supp. 995, 1000 (S.D.Ind.1989).

The Maryland General Assembly enacted provisions requiring incontestability clauses in certain types of life insurance policies as early as 1937. *See* Ch. 196 of the Acts of 1937. In 1951, the General Assembly enacted the Uniform Individual Accident and Sickness Policy Provisions Law which had been proposed by the National Association of Insurance Commissioners in 1950. *See* Ch. 687 of the Acts of 1951. This enactment contained the provisions for incontestability clauses in disability policies which were then codified as Code (1951), Art. 48A, § 153, and later codified as Code (1957, 1994 Repl. Vol.), Art. 48A, § 441. In the eighty-first annual report of the Maryland Insurance Commissioner in 1952, it was pointed out that the 1951 law "provides new and substantially increased protection to policyholders."

■ The purpose of incontestability clauses is to protect insureds and beneficiaries. In *Equitable Life Assurance v.*

*Jalowsky,* 306 Md. 257, 262–263, 508 A.2d 137, 140 (1986), Chief Judge Murphy for the Court explained as follows: "Clearly, this [incontestability] provision was intended to protect the insured, together with the policy beneficiary, from either the nonpayment or dilatory payment of proceeds by the insurer. Of course, the purpose of incontestability provisions is 'to put a checkmate upon litigation; to prevent, after the lapse of a certain period of time, an expensive resort to the courts—expensive both from the point of view of the litigants and that of the citizens of the state.' 1A J. Appleman, *Insurance Law and Practice* § 311 at 311 (rev.1981); *see generally Suskind v. North American Life & Cas. Co.,* 607 F.2d 76 (3d Cir.1979) (discussing history of incontestability clauses)."

*See Beard v. American Agency,* 314 Md. 235, 263, 550 A.2d 677, 691 (1988) ("the incontestability statute serves the substantial public interest in protecting claimants from the possibility of expensive litigation"). *See also* 1A Appleman, *Insurance Law and Practice,* § 311 at 305–306, 321 (1981) ("a beneficiary is in a deplorable condition to wage battle with a large insurer over statements which may have been made years earlier. * * * Such clauses, of course, are for the benefit of the insured, not the insurer"); 18 *Couch On Insurance 2d,* § 72:16 at 293–294 (1983) ("The purpose of an incontestable clause statute is to protect the insured and prevent litigation, and it operates as a statute of limitations. * * * The statute also encourages the insured to have confidence that after the period passes they are assured of receiving benefits upon the happening of a covered loss").

■ Incontestability clauses also serve the purpose of allowing the "insurer a reasonable opportunity" to investigate "the statements made by the applicant in procuring the policy." *Massachusetts Casualty Insurance Co. v. Forman,* 516 F.2d 425, 428 (5th Cir.1975), *cert. denied,* 424 U.S. 914, 96 S.Ct. 1114, 47 L.Ed.2d 319 (1976). *See Schajer v. NML, supra,* 304 N.J.Super. at 407, 701 A.2d at 138 (the incontestability clause provides "ample time for the carrier to investigate fraud and other defenses"). The clause provides a time

limit so that the insurer must investigate with "reasonable promptness if it wishes to deny liability on the ground of false representation or warranty by the insured." Couch, *supra*, § 72:2. *See Equitable Life Assur. Soc. of U.S. v. Bell*, 27 F.3d 1274, 1278 (7th Cir.1994) (the incontestability clause obliges "the insurer to investigate the insured's medical history promptly else it become bound by representations contained on the insured's application").

## B.

 This Court has not previously addressed the question of whether, in applying a statutorily prescribed incontestability clause such as Art. 48A, § 441(2), there is a distinction between a condition which manifests itself prior to the issuance of the policy and a condition which existed prior to the issuance of the policy.

A few courts have agreed with the insurer's position in this case that there is a distinction between a pre-existing condition and a pre-manifesting condition, and that standard statutorily mandated incontestability clauses are not applicable to conditions which manifest themselves prior to the policies. *See Neville v. American Republic Ins. Co.*, 912 F.2d 813 (5th Cir.1990); *Massachusetts Casualty Insurance Co. v. Forman*, *supra*, 516 F.2d 425; *Paul Revere Life Ins. Co. v. Haas*, 137 N.J. 190, 644 A.2d 1098 (1994).

On the other hand, numerous courts have rejected this distinction and held that statutorily required incontestability clauses apply to pre-policy conditions regardless of whether the conditions manifested themselves before the dates of the policies. *See, e.g., Equitable Life Assur. Soc. of U.S. v. Poe*, 143 F.3d 1013 (6th Cir.1998); *Equitable Life Assur. Soc. of U.S. v. Bell*, *supra*, 27 F.3d 1274; *Oglesby v. Penn Mut. Life Ins. Co.*, *supra*, 889 F.Supp. 770, *aff'd* 127 F.3d 1096; *Penn Mut. Life Ins. Co. v. Oglesby*, 695 A.2d 1146 (Del.Supr.1997); *Brock v. Guaranty Trust Life Ins. Co.*, 175 Ga.App. 275, 333 S.E.2d 158 (1985); *Estate of Doe v. Paul Revere Ins. Group*, *supra*, 86 Hawai'i 262, 948 P.2d 1103; *Schajer v. NML*, *supra*,

304 N.J.Super. 394, 701 A.2d 132 (applying New York law); *Monarch Life Ins. Co. v. Brown,* 125 A.D.2d 75, 512 N.Y.S.2d 99 (1987); *White v. Massachusetts Cas. Ins. Co.,* 96 A.D.2d 732, 465 N.Y.S.2d 345 (1983); *Provident Life and Acc. Ins. Co. v. Altman,* 795 F.Supp. 216 (E.D.Mich.1992); *Wischmeyer v. Paul Revere Life Ins. Co.,* 725 F.Supp. 995 (S.D.Ind.1989); *Fischer v. Massachusetts Cas. Ins. Co., supra,* 458 F.Supp. 939. *See also Blue Cross & Blue Shield v. Sheehan,* 215 Ga.App. 228, 450 S.E.2d 228 (1994).

We agree with those cases rejecting the distinction urged by the insurer in the present case.

Most importantly, the distinction is flatly inconsistent with the statutory language set forth in Art. 48A, § 441(2). The incontestability clause required by that subsection precludes denial of a claim, after two years from the date the policy was issued, "on the ground that a disease or physical condition ... had existed prior to the effective date of coverage" of the policy. A condition which manifests itself prior to the effective date of the policy obviously "exists" prior to the effective date of the policy. As stated by the United States Court of Appeals for the Seventh Circuit in *Equitable Life Assur. Soc. of U.S. v. Bell, supra,* 27 F.3d at 1280, "logically, any disease or condition that manifests itself must, of course, exist." The court went on to point out that the word "exist" "refers broadly to a state of being, without reservation as to other qualities, including manifestation." *Id.* at 1281. In *Monarch Life Ins. Co. v. Brown, supra,* 125 A.D.2d at 80, 512 N.Y.S.2d at 103, the Appellate Division of the New York Supreme Court reasoned that

"the term 'exist' ... subsumes the term 'manifest.' Whether an illness is or is not manifest, the fact that it 'exists' prior to the agreement of insurance brings it within the purview of the incontestability clause. The insurer has attempted to carve out an exception to the use of the statutory term 'exist' by employing the word 'manifest', but there is no indication that the Legislature intended anything other than the broader plain intent of the language it used."

The only exception to the operation of the incontestability clause under § 441(2) is a condition "excluded from coverage by name or specific description." Although the insurance policy in this case did exclude certain conditions by name or specific description, for example gastro-intestinal diseases, the parties stipulated that it did not exclude by name or description Holland's disabling condition. As Holland's disabling condition existed prior to the policy, and because it did not fall within the category of statutorily authorized exceptions, it was covered by § 441(2). This Court does not, " 'under the guise of construction, . . . supply omissions . . . in the statute, or . . . insert exceptions not made by the Legislature,' " *Dodds v. Shamer,* 339 Md. 540, 554, 663 A.2d 1318, 1325 (1995), quoting *Amalgamated Insurance v. Helms,* 239 Md. 529, 536, 212 A.2d 311, 316 (1965). *See, e.g., Sears v. Gussin,* 350 Md. 552, 564, 714 A.2d 188, 193 (1998); *Fraternal Order of Police v. Mehrling,* 343 Md. 155, 176, 680 A.2d 1052, 1062 (1996); *Morris v. Gregory,* 339 Md. 191, 199, 661 A.2d 712, 716 (1995).

Moreover, an exception to § 441(2) for a pre-existing condition which may have been manifested before the effective date of the policy cannot be squared with the purpose of statutorily required incontestability clauses. Instead of benefitting the insureds and beneficiaries by "put[ting] a checkmate upon litigation" and " 'prevent[ing], after the lapse of a certain period of time, an expensive resort to the courts,' " *Equitable Life Assurance v. Jalowsky, supra,* 306 Md. at 262, 508 A.2d at 140, such an exception would engender litigation. Whether a certain symptom is a "manifestation" of a later diagnosed disease or condition is frequently an extremely difficult question. Numerous disputes would likely arise, years after the effective dates of policies, as to whether various diseases and conditions were "manifested" before the policies were issued. Recognition of the distinction urged by the insurer in this case would create many additional administrative and judicial proceedings. Insureds and beneficiaries would be subjected to the very type of expensive litigation which incontestability clauses were designed to avoid. As pointed out by the New York court in *Monarch Life Ins. Co. v. Brown, supra,* 125

A.D.2d at 79, 512 N.Y.S.2d at 102–103, the insurer's position "would result in making the incontestability clause absolutely meaningless since the insurer would be able to contest every illness or disease on the basis it had been 'manifest' before the policy was entered into."

 Despite the plain language of § 441(2) and the purpose of incontestability clauses, the insurer argues that the language of § 441(2) does not preclude an insurer from defining in the policy the term "sickness" as it chooses and that, therefore, it is permissible for the insurer to define "sickness" so as to exclude pre-existing conditions which are manifested prior to the issuance of the policy. Thus, the insurer in effect argues that a statutorily required provision or obligation in an insurance policy may be circumvented in a large number of cases by a skillful and abnormal definition of key coverage terms in the policy. If this argument were valid, an insurer could completely circumvent the incontestability clause by defining "sickness" so as to exclude all pre-existing conditions. The insurer's argument, however, has no validity.

This Court has consistently held that, " 'if [an] insurance policy contains a limitation on coverage which is inconsistent with Art. 48A [the Insurance Code] ... , such limitation is unenforceable,' " *West American Insurance Company v. Popa*, 352 Md. 455, 465 n. 2, 723 A.2d 1, 6 n. 2 (1998), quoting *Forbes v. Harleysville Mutual*, 322 Md. 689, 702, 589 A.2d 944, 950 (1991). *See, e.g., Enterprise v. Allstate*, 341 Md. 541, 550, 671 A.2d 509, 514 (1996) ("we have invalidated insurance policy exclusion clauses that are inconsistent with the public policy of this State" reflected in statutory provisions); *Gable v. Colonial Ins. Co.*, 313 Md. 701, 703, 548 A.2d 135, 136 (1988) ("if the policy provision ... is contrary to the Insurance Code, the provision is unenforceable"), *Lee v. Wheeler*, 310 Md. 233, 238, 528 A.2d 912, 915 (1987) ("we have consistently invalidated 'conditions or limitations in an [insurance policy] ... which provide less than the coverage required by the statute' "); *Reese v. State Farm Mut. Auto. Ins.*, 285 Md. 548, 552 n. 1, 403 A.2d 1229, 1231 n. 1 (1979) ("with regard to insurance

coverage required by statute, the provisions of the statute control to the extent of any discrepancy between the statute and a particular policy"). There is no exception to this principle when the policy's limitation on coverage is couched in terms of a definition. *West American Insurance Company v. Popa, supra,* 352 Md. at 465, 723 A.2d. at 6 (if the insurer's definition of a phrase in a policy would indicate less coverage than that required by statute, "the statutory language would prevail over the insurance policy language").

The insurer's argument, based on a disingenuous definition of the term "sickness," has been rejected on numerous occasions. *See, e.g., Equitable Life Assur. Soc. of U.S. v. Bell, supra,* 27 F.3d at 1276–1283; *Estate of Doe v. Paul Revere Ins. Group, supra,* 86 Hawai'i 262, 948 P.2d 1103; *Provident Life and Acc. Ins. Co. v. Altman, supra,* 795 F.Supp. 216; *Wischmeyer v. Paul Revere Life Ins. Co., supra,* 725 F.Supp. 995. In addressing this argument in the *Wischmeyer* case, involving Indiana law, the federal court stated (725 F.Supp. at 1003, emphasis in original):

> "Again, because it needs to be emphasized, the Indiana General Assembly has mandated that *no claim will be denied after two years because of a pre-existing condition.* An exception to the rule of law exists if the insured became disabled during that period. Thus, to the extent that any policies of insurance define disability in terms of sickness manifesting itself after the issuance of the policy, or that otherwise attempt to exclude from coverage any disability stemming from a pre-existing condition, those policies are in direct conflict with the mandate of the legislature once two years has passed."

The court went on to reiterate that giving effect to the policy's definition of "sickness" would be "to thwart the mandate of the legislature." *Id.* at 1004.

The Insurance Commissioner and both courts below correctly held that the "exist-manifest" distinction urged by the insurer, and reflected in the policy's definition of "sickness," is

inconsistent with the incontestability clause in the policy and the incontestability clause prescribed by Art. 48A, § 441(2).

## III.

The insurer also maintains that the Insurance Commissioner lacked authority to order the insurer to pay Holland's claim.

Some of the powers of the Insurance Commissioner, which are pertinent to this case, are as follows. Art. 48A, § 24(1), provides generally that the Insurance Commissioner "shall enforce the provisions of this article...." Section 24(2) of Art. 48A gives the Insurance Commissioner the "powers and authority expressly conferred upon him" as well as the powers and authority "reasonably implied from the provisions of this article."[3] Art. 48A, § 55(2)(i), authorizes the Commissioner to suspend or revoke an insurer's certificate of authority if the insurer "[v]iolates any provision of this article." Section 55(2)(iv) authorizes the Commissioner to revoke or suspend an insurer's certificate of authority if the insurer "[w]ithout just cause unreasonably refuses or delays payment to claimants of the amount due them." Art. 48A, § 55A, authorizes the Commissioner, in lieu of revocation or suspension of an insurer's certificate of authority, to impose monetary penalties upon the insurer or to "require that restitution be made by such insurer to any person who has suffered financial injury or damage as a result of [the insurer's] violation" of the article.[4]

Art. 48A, § 230A, makes, *inter alia,* the following actions by insurers violations of the law: "Refusing to pay a claim for an arbitrary or capricious reason based on all available information" (§ 230A(c)(2)); "Failing to make a good faith attempt promptly, fairly, or equitably to settle claims for which liability has become reasonably clear" (§ 230A(d)(6)); "Failing

---

**3.** Section 24. has since been recodified without substantive change as § 2–1008 of the Insurance Article.

**4.** Sections 55(2) and 55A have since been recodified without substantive change as § 4–113 of the Insurance Article.

promptly to provide a reasonable explanation for the basis for denial of a claim ... " (§ 230A(d)(14)). Section 230A(e)(3) authorizes the Commissioner, upon finding a violation of § 230A, to order restitution of the amount of economic damage up to the limits of any applicable insurance policy.[5]

 The above-summarized provisions clearly authorize the Insurance Commissioner to order an insurer to pay a claim whenever the insurer's refusal to pay the claim violates either the insurance policy or the law, and the insurer in the present case does not argue otherwise. Instead, the insurer argues that there was no violation of the insurance policy because of the policy's definition of "sickness," and that there was no violation of the Insurance Code.

With regard to the Commissioner's finding that the insurer violated Art. 48A, the insurer contends that it did not violate any provision of the Insurance Code. The insurer asserts that Art. 48A, § 441(2), was not violated because the insurer "did follow § 441(2) by including the Incontestable Clause in the policy at issue in this case" (petitioner's reply brief at 7). The insurer argues that since, in its view, there was no violation of § 441(2), there was also no violation of §§ 55(2)(i), 55(2)(iv), or 55A, because those are mere "enforcement" sections and allegedly are dependent upon some other violation of Art. 48A. The insurer also seems to argue that there was no violation of § 230A(c)(2) because, in its opinion, the refusal to pay Holland's claim was not "arbitrary or capricious."

 The insurer's argument in this case appears to be that, if a statute requires that a particular provision be included in an insurance policy, and the insurer in fact includes such provision in the policy, the insurer has thereby complied with the law even though it refuses to give effect to the statutorily required provision. This argument, in our view, borders on the frivolous. When the Legislature requires that a particular clause be included in an insurance policy, the

---

5. Section 230A has since been recodified without substantive change as § 27–303 of the Insurance Article.

legislative intent is that there be compliance with the clause. Otherwise, the statute would be nugatory. Statutory requirements with regard to insurance coverage have consistently been treated as mandatory and as delineating the minimum coverage to which insureds or beneficiaries are entitled. *See, e.g., Forbes v. Harleysville Mutual, supra,* 322 Md. at 695–699, 589 A.2d at 947–949, and cases there cited. The Insurance Commissioner is authorized to enforce insurance policies in accordance with provisions that the Legislature determined should be included in such policies. *Guardian Life Ins. v. Ins. Comm'r,* 293 Md. 629, 446 A.2d 1140 (1982).

Consequently, the Maryland Insurance Commissioner was clearly authorized to order that the insurer pay Holland's claim.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. PETITIONER TO PAY COSTS.*